PORTER v OVERTON

Docket Nos. 184475, 185397. Submitted September 19, 1995, at De-
troit. Decided October 20, 1995, at 9:20 A.M. Leave to appeal
denied, 451 Mich —.

Leigh Porter, also known as Leigh McGuffin, filed paternity
actions in 1984 in the Wayne Circuit Court and the Jackson
Circuit Court with regard to her minor children, Jonathan
Porter, born in Wayne County, and Nathaniel Porter, born in
Jackson County. Russell Overton, Jr., stipulated that he was
the father of both boys, and, pursuant to the orders of filiation,
Leigh was given custody of both boys. Leigh and Carol Porter,
formerly known as Carol Hess, began living together in a
monogamous lesbian relationship in 1987 and the boys contin-
ued to reside with Leigh and Carol until Leigh's death in
January 1995. Before her death, Leigh executed a power of
attorney delegating all her parental powers to Carol and exe-
cuted a will that purported to make Carol the guardian of the
children. In January 1995, Carol filed a petition for guardian-
ship of the boys in the Wayne County Probate Court. In
February 1995, Overton obtained an ex parte order for custody
of Nathaniel as part of the 1984 paternity action in Jackson
County. Overton also obtained an ex parte custody order for
Jonathan as part of the 1984 paternity action in Wayne
County. Overton thereafter took custody of the children. Carol
filed an action for custody of the boys in the Wayne Circuit
Court, and her petition for guardianship was stayed. Carol was
granted temporary visitation rights, and the Wayne Circuit
Court consolidated Carol's custody action with the custody
motions filed by Overton in the 1984 Wayne County paternity
action. The Wayne Circuit Court, William J. Giovan, J., deter-
mined that Carol had standing to defend against Overton's
petition for custody and issued an order vacating the ex parte
custody order concerning Jonathan, who was returned to Car-
ol's custody. Carol also brought motions in the Jackson Circuit
Court seeking to vacate its ex parte custody order regarding

REFERENCES

Am Jur 2d, Courts § 189; Divorce and Separation §§ 963-986; In-
fants §§ 28, 29, 30; Parent and Child §§ 10, 11, 23-26, 28, 30.
See ALR Index under Custody and Support of Children; Judgments,
Orders, and Decrees; Precedents.

Nathaniel and to transfer venue to Wayne County. The court, Charles A. Nelson, J., entered an order denying Carol's motions. Carol sought leave to appeal and brought motions for immediate consideration, to expedite, and for peremptory reversal with regard to the actions of the Wayne Circuit Court (Docket No. 184475) and the Jackson Circuit Court (Docket No. 185397).

The Court of Appeals *held:*

Carol does not have standing to assert any rights to the children, even if she were viewed as the party against whom the custody action has been brought. The Legislature has limited the third parties who may bring an action for custody. Under MCL 722.26c(1)(b); MSA 25.312(6c)(1)(b), Carol does not have standing to bring an action for custody.

In lieu of granting leave to appeal in Docket No. 185397, the decision of the Wayne Circuit Court finding that Carol has standing must be reversed. The application for leave to appeal in Docket No. 184475 must be denied. All other pending motions must be denied as moot.

1. PARENT AND CHILD — CHILD CUSTODY ACT — THIRD PARTIES.

   The Child Custody Act involves procedure only and does not create substantive rights of entitlement to custody of a child; no provision in the act gives a third party who is not a guardian or a limited guardian a right to legal custody of a child on the basis of the fact that the child either resides with or has resided with the third party; a third party is not permitted to create a custody dispute by filing a complaint in the circuit court alleging that giving the third party legal custody is in the best interests of the child (MCL 722.21; MSA 25.312[1]).

2. COURTS — COURT OF APPEALS — UNPUBLISHED PRONOUNCEMENTS — PRECEDENTIAL VALUE.

   Unpublished pronouncements of the Court of Appeals have no precedential value (MCR 7.215[C][1]).

*Law Offices of Michael J. Sharpe, P.C.* (by *Michael J. Sharpe*), for Russell Overton, Jr.

*Bookholder & Bassett, P.C.* (by *Scott Bassett*), for Carol Porter.

Child Advocacy Law Clinic, the University of

Michigan Law School (by *Donald N. Duquette* and *Suellyn Scarnecchia*), for the minor children.

Before: HOOD, P.J., and GRIBBS and FITZGERALD, JJ.

PER CURIAM. In these cases partly consolidated in the Wayne Circuit Court, we have received applications for leave to appeal, motions for immediate consideration, motions to expedite, and motions for peremptory reversal. All these pleadings involve orders entered in the Jackson Circuit Court and the Wayne Circuit Court concerning conflicting claims to custody of two minor children.

We held the applications and the motions other than the motions for immediate consideration in abeyance, and, by order dated July 14, 1995, instructed the parties to brief the issue whether third-party appellee, Carol Porter, formerly known as Carol Hess,[1] who has no biological connection with the children has standing to challenge the petitions of Russell Overton, Jr., the natural father of the children, to obtain custody. Briefs were filed and the parties were afforded an opportunity to present oral argument on September 20, 1995. In view of the nature of this proceeding, we have elected to render an opinion and judgment pursuant to MCR 7.215(E) and MCR 7.216(A)(7).

This action involves the custody of two minor children, Jonathan Porter (born May 3, 1982) and Nathaniel Porter (born August 10, 1984). The boys were born out of wedlock to Leigh McGuffin, also known as Leigh Porter. In 1984, Leigh filed paternity actions in Wayne County, where Jonathan was born, and in Jackson County, where Nathaniel was born. Russell Overton stipulated that he

---

[1] The parties indicated at oral argument that Carol Hess officially changed her name to Carol Porter in a probate court proceeding.

was the biological father of the boys. Pursuant to the orders of filiation, Leigh was given custody of the boys.

In late 1987, Leigh and Carol Porter began living together in a monogamous lesbian relationship. The boys continued to reside with Leigh and Carol until Leigh's death in January 1995. Shortly before her death, Leigh executed a power of attorney delegating all her parental powers to Carol. Leigh also executed a will, which purported to make Carol the guardian of her children. The will stated that Leigh did not want Overton named as guardian because he failed to establish a relationship with the boys. As of March 1995, Overton's support obligation regarding the boys was nearly $20,000 in arrears.

On January 23, 1995, Carol filed a petition for guardianship of the boys in the Wayne County Probate Court. A guardianship hearing scheduled for February 29, 1995, was adjourned to March 20, 1995, to allow Carol to locate and give notice to Overton.

On February 24, 1995, Overton obtained an ex parte order for custody of Nathaniel as part of the 1984 Jackson County paternity action. The child support arrearage was canceled by the Jackson Circuit Court. Overton also obtained an ex parte custody order for Jonathan as part of the 1984 Wayne County paternity action on March 1, 1995. Overton apparently asserted his right to custody by picking up the boys from their schools on March 6, 1995, and taking them to his residence.

On March 15, 1995, Carol filed an action for custody of the boys in the Wayne Circuit Court, and the petition for guardianship was stayed. After a hearing on March 17, 1995, Carol was granted temporary visitation rights with the children and the court consolidated Carol's custody

action with the custody motions filed by Overton in the 1984 Wayne County paternity action. The parties were ordered to brief the issue whether Carol had standing to defend against Overton's petition for custody. Oral argument was heard on May 19, 1995, and the court determined that Carol had standing. On May 24, 1995, the circuit court issued an order regarding the standing issue and on June 12, 1995, it issued an order vacating the ex parte custody order concerning Jonathan, who was returned to Carol's custody.

In Jackson County, Carol filed a motion to vacate the February 24, 1995, ex parte custody order regarding Nathaniel and asked for a transfer of venue to Wayne County. On April 17, 1995, the Jackson Circuit Court entered an order denying Carol's motions. During oral argument, Overton asserted that Carol had no standing. While not issuing a written order deciding the issue, the Jackson court stated on the record that it agreed with Overton.

The parties' respective appeals to this Court followed and this Court ordered briefing of the standing issue. The Child Advocacy Law Clinic became involved one month after Overton picked up his sons from school when it filed an appeal in this Court on the boys' behalf.[2] The clinic requested an immediate return of the boys to Carol's custody, pending a hearing regarding the children's best interests.

---

[2] Although we allowed the Child Advocacy Law Clinic to participate at oral argument as amicus curiae, we repeat what we pointed out at that time, i.e., *In re Clausen*, 442 Mich 648, 685-691; 502 NW2d 649 (1993), unequivocally rejected arguments that a minor child has a right to bring an action and obtain a best interest hearing under the Child Custody Act. It is obvious that standing on behalf of the children cannot be established by the mere expedient of filing an application for leave to appeal with this Court, and we question the apparently gratuitous intervention of the clinic in this matter. See *In re Shaffer*, 213 Mich App 429; — NW2d — (1995).

The issue of third-party standing in actions involving the Child Custody Act has been discussed in several recent cases. In *Bowie v Arder,* 441 Mich 23; 490 NW2d 568 (1992), our Supreme Court discussed its decision in *Ruppel v Lesner,* 421 Mich 559; 364 NW2d 665 (1984):

> [T]he Child Custody Act involves procedure only, setting forth "presumptions and standards by which competing claims to the right of custody are to be judged," but . . . the act "does not create substantive rights of entitlement to custody of a child." [*Bowie, supra* at 43, quoting *Ruppel, supra* at 565.]

The Bowie Court noted:

> There is simply no provision of the act that can be read to give a third party, who is not a guardian or a limited guardian, a right to legal custody of a child on the basis of the fact that the child either resides with or has resided with that party. [*Id.*]

The Court rejected the urging of amici curiae to create a right to legal custody of a child in those with whom the child resided. *Id.* at 45-47. The Supreme Court in *Bowie* reaffirmed the *Ruppel* decision that a third party is not permitted to create a custody dispute by filing a complaint in the circuit court alleging that giving the third party legal custody is in the best interests of the child.

While the above-quoted language from *Bowie* and *Ruppel* might imply that the Supreme Court intended only to prohibit the creation of a custody dispute through the initiation of a court action by a nonparent third party, the decision of *In re Clausen,* 442 Mich 648; 502 NW2d 649 (1993), is

not so limited. In *Clausen,* the Supreme Court specifically addressed a statement made in *Bowie* and emphasized by the petitioners in *Clausen,* the DeBoers: Custody may be awarded to third parties once judicial intervention has occurred.

In *Clausen,* the DeBoers filed a petition on February 25, 1991, for adoption of a baby girl in Iowa. At a hearing in the Iowa juvenile court, the parental rights of Cara Clausen, the biological mother, and the man she named as father of the child were terminated. The petitioners were granted custody. Nine days after the adoption petition was filed, Clausen filed a motion in the Iowa juvenile court for revocation of her release of custody and submitted an affidavit stating that she lied when she previously identified the father of her daughter. Clausen stated in the affidavit that the father was actually Daniel Schmidt. Schmidt filed an affidavit of paternity and a petition to intervene in the DeBoers' adoption proceeding.

A bench trial regarding the issues of paternity, termination of parental rights, and adoption was held on November 4, 1991, and on December 27, 1991, the district court in Iowa denied the adoption petition. On remand from the Iowa Supreme Court, the district court terminated the DeBoers' rights as temporary guardians and custodians of the child on December 3, 1992. On the same day, the DeBoers filed a petition in the Washtenaw Circuit Court asking it to assume jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), MCL 600.651 *et seq.*; MSA 27A.651 *et seq.* The DeBoers requested the Washtenaw Circuit Court to enjoin enforcement of the Iowa custody order and find it unenforceable or modify it to give them custody. The circuit court entered an ex parte temporary restraining order, which directed that the DeBoers retain custody.

On appeal from the circuit court's denial of Schmidt's motion for summary disposition, this Court found that the court did not have jurisdiction under the UCCJA and that the DeBoers did not have standing to bring the action in Michigan. 199 Mich App 10; 501 NW2d 193 (1993). The DeBoers argued that because judicial intervention had begun in Iowa two years before they sought modification of the Iowa order terminating their rights as temporary guardians and custodians of the child, they did not *create* the dispute. The *Clausen* Court was not persuaded:

> We . . . agree with the Court of Appeals rejection of the DeBoers' arguments regarding the "creation" of a dispute and that they only seek to modify the Iowa order. It is true that *Bowie* recognized the incidental application of the Child Custody Act standards in other kinds of actions—typically divorce cases. However, the problem with the DeBoers' reasoning is that there is no action that they are entitled to bring to which the Child Custody Act can be applied incidentally.
>
> . . . [A]s the Court of Appeals said, when the temporary custody order was rescinded, [the DeBoers] became third parties to the child and no longer had a basis on which to claim a substantive right of custody. [442 Mich 682-683.]

Moreover, in a footnote, the Supreme Court concluded that had their rights as temporary guardians and custodians been rescinded after the filing of their action in Michigan, the DeBoers would have no standing. *Id.* at 683, n 40.

On the basis of this reasoning, it appears that Carol is without standing to assert any rights to the children, even if she were viewed as the party against whom the custody action has been brought. Under *Clausen,* the creation of a "custody dispute" can be interpreted as an assertion of

rights to the custody of the children, so as to prevent a person without those rights from challenging a parent's petition for custody.

In addition to the pronouncements by the Supreme Court, the Legislature has spoken on the subject in enacting 1993 PA 259, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, which provides that third parties have standing to file a child custody action: if they are a guardian or limited guardian, if divorce or separate maintenance proceedings have been instituted, if there is a finding of parental unfitness, if a child has been placed for adoption (certain restrictions apply), or under MCL 722.26c (1)(b); MSA 25.312(6c)(1)(b), if the court finds:

> (b) All of the following:
> (i) The child's biological parents have never been married to one another.
> (ii) The child's parent who has custody of the child dies or is missing and the other parent has not been granted legal custody under court order.
> (iii) The third person is related to the child within the fifth degree by marriage, blood, or adoption.

The Legislature thus has been very specific in limiting those third persons who may bring an action for custody. Carol Porter's only possible way to gain standing would be under MCL 722.26c; MSA 25.312(6c). Under this statute, however, it appears that Carol Porter (who has not been appointed a guardian or limited guardian) would not have standing to bring an action for custody because she does not meet requirement b(iii).

Carol Porter also points to an unpublished order of this Court, entered before the amendments of the Child Custody Act, in which we remanded to the trial court for a "best interest" hearing in a

case involving a stepfather's quest for custody. We note both that unpublished pronouncements by this Court have no precedential value, MCR 7.215(C)(1), and, as indicated, the order was entered before the 1993 amendments.[3] She also relies heavily upon a peremptory order of reversal entered by our Supreme Court in *Ringler v Converse,* 445 Mich 907; 515 NW2d 739 (1994), involving a great-aunt and a great-uncle, in which the Court stated:

> In lieu of granting leave to appeal, the judgment of the Court of Appeals is reversed, and the judgment of the Kent Circuit Court is reinstated. MCR 7.302(F). A circuit court does not err in exercising its jurisdiction to decide a bona fide dispute in a child custody case whether that dispute is brought before the court by a proper petition for custody under the Child Custody Act, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.,* or by a defendant's counterclaim. See *Bowie v Arder,* 441 Mich 23 [490 NW2d 568] (1992).

Neither of the circumstances described in *Ringler* is present in this case. Instead, we are faced with the clear holdings in *Ruppel, Bowie,* and *Clausen,* which indicate that Carol Porter simply has no standing. Until the Supreme Court indicates otherwise, or until the Legislature acts to give relief to persons situated similarly to Carol Porter, we are bound by existing precedent. As our Supreme Court admonished in *People v Mitchell,* 428 Mich 364, 369-370; 408 NW2d 798 (1987):

---

[3] The order was entered in a factually distinguishable case. In that case, the biological parents of the children were divorced and the mother was granted physical custody. The mother remarried. When the mother was killed in an automobile accident, the stepfather of the children filed a petition for custody. The issue of standing, although raised in the trial court, was not an issue that was raised before this Court.

Although the Court of Appeals panel in this case correctly anticipated our holding, we disapprove of the manner in which the panel indicated its disagreement with [*People v Goff,* 401 Mich 412; 258 NW2d 57 (1977)]. An elemental tenet of our jurisprudence, stare decisis, provides that a decision of the majority of justices of this Court is binding upon lower courts. See *Negri v Slotkin,* 397 Mich 105, 107; 244 NW2d 98 (1976). *Goff* was a per curiam opinion signed by all the members of this Court and, therefore, binding upon the Court of Appeals. While the Court of Appeals may properly express its belief that *Goff* was wrongly decided, or no longer viable, its disagreement with that decision did not excuse its failure to apply *Goff* to the facts of this case.

What we are asked by Carol Porter to do in this case is take the route expressly condemned by the Supreme Court in *Mitchell.* We decline to do so.

Accordingly, in lieu of granting leave to appeal in Docket No. 185397, we order that the decision of the Wayne Circuit Court finding that Carol Porter has standing is reversed for the reasons stated in this opinion. The application for leave to appeal from the Jackson Circuit Court in Docket No. 184475 is denied. All other pending motions are denied as moot. Our ruling has no effect whatsoever on Carol Porter's standing if she is successful in her attempts to be appointed guardian of the minor children.