MASON v SIMMONS

Docket No. 257692. Submitted June 8, 2005, at Lansing. Decided June 28, 2005, at 9:20 a.m.

Dominique D. Mason brought an action in the Ingham Circuit Court, Family Division, against William Simmons, seeking a determination of the paternity of a minor child and child support. The plaintiff is the half-sister of the child and had been her guardian and custodian since the death of their mother three years earlier. The defendant acknowledged paternity and was ordered to pay child support. The defendant subsequently moved for custody of the child, and the court, Richard J. Garcia, J., ultimately granted joint legal custody to the parties but continued physical custody with the plaintiff, ruling that because Simmons had not claimed paternity and had made minimal effort to assume his parental rights and duties during the several years from the time of the death of the child's mother until the paternity case, the defendant was not entitled to the strong statutory presumption in favor of a fit parent in determining custody in the child's best interests. The defendant appealed.

The Court of Appeals *held*:

There are statutory presumptions of priority for both a parent seeking custody against a third party and for an established custodial environment. MCL 722.25(1), 722.27(1)(c). In this case, the two are in conflict. Generally, the priority of these presumptions is for a fit parent over a third-party custodial environment because of the fundamental parental liberty interest in making decisions concerning the care, custody, and control of children, thus requiring the third-party custodian to show by clear and convincing evidence that the best interests of the child require maintaining the established custodial environment. In this case, however, because Simmons had failed to acknowledge paternity for the first six years of the child's life and neglected the child for an additional three years, he is not a fit parent entitled to the legal presumption. The circuit court committed no clear legal error in placing the burden of persuasion on Simmons to show by a preponderance of the evidence that a change in the established

custodial environment with Mason was in the child's best interests.

Affirmed.

CHILDREN BORN OUT OF WEDLOCK — CUSTODY — PARENTS — ESTABLISHED CUSTODIAL ENVIRONMENTS.

There are statutory presumptions of priority in a child custody case for both a parent seeking custody against a third party or agency and for an established custodial environment with a third party or agency; the general rule is that the presumption in favor of a fit parent takes priority over the presumption in favor of the third-party custodial environment, thus requiring the third party custodian to show by clear and convincing evidence that the best interests of the child require maintaining the established custodial environment; however, where the parent is not fit on the basis of neglect or abandonment, it is not legal error for the trial court to place the burden of persuasion on the parent to show by a preponderance of the evidence that a change in the established custodial environment with the guardian is in the child's best interests (MCL 722.25[1], 722.27[1][c]).

*P. Greg Gulick* for the plaintiff.

*Philip E. Hodgman* for the defendant.

Before: OWENS, P.J., and CAVANAGH and NEFF, JJ.

NEFF, J. In this child custody dispute, defendant father appeals as of right an order of the family division of the circuit court granting him joint legal custody of his eleven-year-old daughter, Dionna, but ordering that physical custody remain with plaintiff, the child's half-sister and legal guardian, who has had primary care of Dionna for five years following their mother's death. We affirm.

The trial court found that defendant was not entitled to the traditional strong presumption that the award of custody to the natural parent serves the child's best interests because defendant had not sought a paternity determination and had abandoned his parental role

after the child's mother died. The court nevertheless accorded defendant deference as the natural parent by placing the burden of persuasion on defendant to show by a preponderance of evidence, rather than clear and convincing evidence, that a change of physical custody to defendant was in the child's best interests.

Following a hearing de novo, the court concluded that it was in Dionna's best interests to continue physical custody with plaintiff, but the court granted defendant primary physical custody during the summer and extended parenting time, including alternate weekends; every Thanksgiving weekend, including all Thanksgiving holidays; every Christmas break, including all Christmas holidays; and parenting time when Dionna is not in school over a three-day weekend.

## I. ISSUE

The question before this Court is whether the trial court erred in failing to accord defendant the constitutional deference to which a natural parent is generally entitled in determining a child's best interests in a custody dispute between a parent and a third person pursuant to *Heltzel v Heltzel*, 248 Mich App 1, 23-24, 27-28; 638 NW2d 123 (2001), which requires that Michigan's statutory parental presumption, MCL 722.25(1), be given priority over the established custodial environment presumption, MCL 722.27(1)(c), and that the third person prove by clear and convincing evidence that all relevant factors, taken together, MCL 722.23, demonstrate that the child's best interests require placement with the third person.

We hold that the standard and reasoning of *Heltzel* do not govern this case because the trial court found that defendant was not a fit parent on the basis of his neglect of Dionna, and, therefore, the trial court did not clearly

err in according defendant a lesser standard of deference than that announced in *Heltzel* in determining custody.

## II. FACTS

It is undisputed that defendant is the natural father of Dionna, although his exact involvement in her life before her mother died is unclear. Defendant was not married to Dionna's mother and it appears that he never resided with her. The mother did not acknowledge defendant as the father at the time of Dionna's birth in November 1993. Nor did defendant seek to be legally acknowledged as Dionna's father.

According to the record, from birth until age five, Dionna lived with her biological mother in Detroit, in which city defendant also lived. Until the mother died in May 1999, defendant did have contact with Dionna. When Dionna's mother died, plaintiff, who lived in Lansing, applied for guardianship of Dionna, which was granted in July 1999. After the mother's death, defendant had no contact with Dionna for three years. Dionna lived with plaintiff and her husband[1] and attended school in Lansing.

It was not until 2002, when plaintiff sought medical coverage for Dionna through the Family Independence Agency[2] (FIA) and the state filed a paternity action, that defendant legally acknowledged that he was Dionna's father. Following a paternity test, defendant signed an acknowledgement of paternity in May 2002, and was ordered to pay child support, including an arrearage for

---

[1] During the pendency of this action, plaintiff and her husband divorced.

[2] The agency has since been renamed and is now the Department of Human Services.

back child support. Two months later, in July 2002, defendant filed a motion for a change of custody of Dionna. After a conciliation conference with the Friend of the Court (FOC) conciliator, an order was entered granting plaintiff legal and physical custody of Dionna, and granting defendant parenting time. Defendant appealed the conciliator's order and, following an investigation and hearing before an FOC referee, the conciliator's decision was reversed. The FOC referee recommended that defendant be granted custody of Dionna because plaintiff failed to prove by clear and convincing evidence that custody should be awarded to her.

Plaintiff then filed objections to the referee's recommendation seeking review de novo of the referee's decision. The court conducted a hearing de novo over three days from November 2003 to January 2004, during which the parties presented additional testimony and evidence.

According to the testimony, defendant is a retired Detroit police officer. He testified that he was employed as a police officer in the court system for twenty years and was familiar with court procedures. At the time Dionna was born, he had no doubt that he was her father. However, he did not seek paternity because that was the mother's wish and he thought he could do nothing about it. He testified that while the mother was alive, he was regularly involved in Dionna's life, taking her places, picking her up from school, and doing other things that any father living in the house would do.

The parties dispute whether defendant was notified that plaintiff was seeking guardianship of Dionna after her mother's death. Defendant testified that he first learned that plaintiff had been appointed as Dionna's guardian sometime in 2002; however, between 1999 and

2002, he was uncertain of Dionna's whereabouts and took no legal action in regard to Dionna.

Defendant had not paid support for Dionna except on an extremely infrequent basis. However, defendant had supported ten children, including three other minor children for whom he was currently paying child support.

Plaintiff testified that she is Dionna's half-sister and that she assumed guardianship of Dionna when their mother died. Further, Dionna calls plaintiff "Mom." Dionna's teacher testified that Dionna was smart, interacted well with friends, and was generally doing well in school. She stated that plaintiff was very involved with Dionna's school activities.

The court heard additional testimony, and the parties stipulated the consideration of the record before the FOC referee. Before rendering its decision, the court ruled that given defendant's neglect of Dionna after her mother died, defendant was not entitled to the strong statutory presumption in favor of a fit parent under which the court must presume that awarding custody to the parent is in the child's best interests. Accordingly, the burden of proof and burden of persuasion announced in *Heltzel* did not apply because defendant was not entitled to the constitutional deference generally accorded fit parents with regard to their children. Instead, the court stated that it was applying a lesser standard of deference to defendant, under which he had the burden of persuasion to show by a preponderance of evidence that a change of custody to defendant was in the best interests of the child.

The court weighed the best interests factors and granted joint legal custody to both parties, but ordered

that physical custody continue with plaintiff. However, the court granted defendant extended parenting time, as noted above.

### III. STANDARD OF REVIEW

To expedite the resolution of a child custody dispute by prompt and final adjudication, all custody orders must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue. MCL 722.28; *Harvey v Harvey*, 257 Mich App 278, 282-283; 668 NW2d 187 (2003) (quoting MCL 722.28), aff'd on other grounds 470 Mich 186 (2004). " 'Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets or applies the law.' " *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003) (citations deleted).

### IV. CHILD CUSTODY ACT

"The Child Custody Act of 1970, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, governs child custody disputes between parents, agencies, or third parties." *Booth v Booth*, 194 Mich App 284, 292; 486 NW2d 116 (1992); *Harvey, supra* at 291. The act is a comprehensive scheme intended to promote the best interests of children, and it is to be liberally construed. MCL 722.26(1); *Harvey*, 470 Mich 191-192; *Thompson v Thompson*, 261 Mich App 353, 361 n 2; 683 NW2d 250 (2004). The act creates presumptions and standards by which competing custody claims are to be judged and sets forth the procedures and the forms of relief available. *Ruppel v Lesner*, 421 Mich 559, 565; 364 NW2d 665 (1984); *Porter v Overton*, 214 Mich App 95, 100; 542 NW2d 288 (1995). "Above all, custody disputes are to be resolved in the

child's best interests," according to the factors set forth in MCL 722.23. *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001).

Statutory presumptions affect the burden of proof. In a dispute between a parent and an agency or third party, MCL 722.25(1) creates the presumption that the child's best interests are served by awarding custody to the parent. The contrary must be established by clear and convincing evidence. *Id.*; *LaFleche v Ybarra*, 242 Mich App 692, 696-697; 619 NW2d 738 (2000). However, the act also includes a presumption in favor of an established custodial environment. When a custody decision would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that the change is in the child's best interests. MCL 722.27(1)(c); *LaFleche, supra* at 697.

### V. DEFENDANT'S CLAIMS

On appeal, defendant asserts that the court correctly determined that the presumption in favor of a fit parent outweighs the presumption in favor of a third party custodian despite an established custodial environment with the third person. We agree.

Defendant further argues, however, that the court committed error requiring reversal in finding that he was not a fit parent on the basis of his neglect of Dionna during the three years between her mother's death and the adjudication of paternity and, therefore, finding that defendant was not entitled to the constitutional presumption in favor of a fit parent. We disagree. We find no clear legal error, nor do we conclude that the trial court's findings concerning neglect were against the great weight of the evidence. We are therefore

obligated to affirm the custody determination. MCL 722.28; *Harvey, supra* at 283.

## VI. *HELTZEL v HELTZEL*

In enacting the Child Custody Act, the Legislature incorporated a presumption in favor of the natural parent as well as a presumption in favor of an established custodial environment. In a custody dispute between a natural parent and a third party with whom the child has an established custodial environment, these presumptions are clearly at odds.

Panels of this Court have had conflicting views of the legal effect of the competing "parental preference" and "established custodial environment" presumptions with respect to the burden of proof and burden of persuasion in a child custody dispute. *Heltzel, supra* at 15-17. One line of cases held that in a dispute between a parent and a third party with whom there was an established custodial environment, the parental presumption, MCL 722.25(1), weighed more heavily and therefore the third party bore the burden of rebutting by clear and convincing evidence the statutory presumption favoring the natural parents. *Heltzel, supra* at 15-16. A second line of cases concluded, however, that the existence of the two presumptions reduced the burden of proof from clear and convincing to a preponderance of the evidence and that the burden of persuasion rests with the parent challenging the established custodial environment. *Id.* at 16-17, citing *Rummelt v Anderson,* 196 Mich App 491, 496; 493 NW2d 434 (1992).

In *Heltzel,* this Court resolved the longstanding conflict concerning the Michigan statutory presumptions on the basis of the United States Supreme Court's decision in *Troxel v Granville,* 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000), which reiterated the

fundamental constitutional right of fit parents to make decisions concerning the care, custody, and control of their children. *Heltzel, supra* at 18-24. Citing *Troxel's* reminder of the importance of the fundamental parental liberty interest, the *Heltzel* Court concluded that a fit natural mother seeking a change of her child's custody from an established custodial environment with a third person could not be required to show that a change in custody was in the child's best interests. *Heltzel, supra* at 23. To do so "unconstitutionally places on the natural parent the ultimate burden of persuasion that an award of custody to the parent would serve the child's best interests." *Id.* at 22. " '[T]he court must accord at least some special weight to the parent's own determination.' " *Id.*, quoting *Troxel* at 70.

The *Heltzel* Court also held that in a child custody dispute between a fit, natural parent of a child and a third-party custodian, the statutory parental presumption, MCL 722.25(1), must be given priority over the established custodial environment presumption, MCL 722.23, and, therefore, the third person must prove by clear and convincing evidence "that all relevant factors, including the existence of an established custodial environment and all legislatively mandated best interest concerns," taken together, demonstrate that the child's best interests require placement with the third person. *Heltzel, supra* at 27. Accordingly, pursuant to the holding in *Heltzel*, the trial court in this case correctly recognized that the presumption in favor of a fit parent outweighs the presumption in favor of a third-party custodian with whom there exists an established custodial environment.

VII. APPLICATION OF *HELTZEL*

Recognizing the holding and rationale of *Heltzel*, we now turn to the crux of the issue in this case to

determine whether the trial court clearly erred in failing to apply the rules announced in *Heltzel* to defendant. No published case has yet addressed the implications of *Heltzel* in circumstances in which a parent seeking custody is found to be unfit, or to have neglected or abandoned a child. We conclude that this case is not governed by *Heltzel*, and we find no clear error in the court's custody decision.

The trial court reasoned that, given defendant's neglect of Dionna, defendant was not entitled to the constitutional deference accorded a fit parent under the reasoning in *Heltzel* and *Troxel*. The court applied a lesser standard of deference by placing the ultimate burden of persuasion on defendant to show by a preponderance of the evidence that it was in Dionna's best interests to change custody of Dionna to him.

The trial court's resolution of the conflicting presumptions comports with the statutory provisions recognizing both a presumption in favor of a natural parent and a presumption in favor of an established custodial environment. The trial court determined that defendant was entitled to deference as the natural parent, but not the strong deference recognized *Heltzel* or *Troxel*. We find no clear legal error.

The constitutional standards applied in *Heltzel* and *Troxel* apply in the case of a fit parent. Neither the holdings nor the rationale logically apply if a parent's conduct is inconsistent with a parent's protected interest in a child. In relying on and quoting *Troxel*, the *Heltzel* Court indicated that the fitness of the parent is an essential premise of the analysis:

> First, the [grandparents] did not allege, and no court has found, that [the mother] was an unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children.

As this Court explained in *Parham* [ *v J R*, 442 US 584; 99 S Ct 2493; 61 L Ed 2d 101 (1979)]:

"[O]ur constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations. . . . The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children." 442 US at 602; 99 S Ct 2493 (alteration in original) (internal quotation marks and citations omitted).

"Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. . . .

"The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests. . . .

"The judge's comments suggest that he presumed the grandparents' request should be granted unless the children would be "impact[ed] adversely." In effect, the judge placed on [the mother], the fit custodial parent, the burden of *disproving* that visitation would be in the best interest of her daughters. . . .

"The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. . . . In that respect, the court's presumption failed to provide any protection for [the mother's] fundamental constitutional right to make decisions concerning the rearing of her own daughters. . . . In an ideal world, parents might always seek to cultivate the bonds between grand-

parents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." [*Heltzel, supra* at 19-20, quoting *Troxel, supra* at 68-70 (opinion by O'Connor, J.) (emphasis in original).]

The *Heltzel* Court's resolution of the competing statutory presumptions was based on the constitutional underpinnings of *Troxel*, which are based on presumptions about fit natural parents and their interests in protecting and caring for their children. If a parent is unfit or fails to adequately care for a child, i.e., neglects or abandons a child, those presumptions are extinguished. Accordingly, because the trial court found that defendant did not have the status of a fit parent on the basis of his neglect, the court did not clearly err in failing to apply the standards announced in *Heltzel*.

### VIII. PARENTAL PREFERENCE STANDARD

The parties raise an issue of case law from other jurisdictions that recognize exceptions to the parental preference presumption. Plaintiff cites cases from other jurisdictions that shift the burden of proof in a custody dispute to a parent upon a showing of "voluntary forfeiture" or "constructive abandonment" of the child. The parties agree that Michigan has not adopted this rule. Defendant contends that this rule should not be adopted in Michigan. We agree that this general rule does not govern in Michigan following the adoption of the Child Custody Act.

A number of jurisdictions adhere to the parental preference standard, sometimes known as the "unfit-

ness" or "extraordinary circumstances" rule. 2 Little, Child Custody and Visitation Law & Practice (2003), § 11.03[1], p 11-6. If the parent is found to be unfit or extraordinary circumstances are present, a court may then "evaluate the 'best interests' " of the child to determine who shall be named as the child's custodian." *Id.* at 11-14. However, some jurisdictions, including Michigan, have moved away from using the "parental unfitness" or "extraordinary circumstances" standards and focus on a placement's detriment to the child. *Id.* "Michigan has codified the presumption to provide that if the child custody dispute is between the parent or parents and an agency or a third person, the court must presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence." *Id.*

That Michigan no longer recognizes the common-law rules for exceptions to the parental presumption seems clear. The parental presumption of § 5 of the Child Custody Act creates a presumption that applies in *all* custody disputes between parents and an agency or a third person:

> If a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence. [MCL 722.25(1).]

Further, this Court has recognized that in enacting the Child Custody Act, the Legislature purposely rejected the former exceptions based on unfitness, abandonment, or neglect:

Prior to the Child Custody Act of 1970, in a dispute between a parent and a third party or agency the best interests of the child were deemed to be served by awarding custody to the parent unless it could be affirmatively proven that the parent was unfit to have custody or had neglected or abandoned the child. Furthermore the court could not indulge in a comparison between the parental home and the proposed alternative. *In re Ernst*, 373 Mich 337; 129 NW2d 430 (1964), *Rincon v Rincon*, 29 Mich App 150; 185 NW2d 195 (1970). Neither of these formerly accepted principles were incorporated within the comprehensive provisions of the Child Custody Act. Since the Legislature is presumed to be aware of the long-standing judicial precedent affecting an area in which an exhaustive codification of the law is undertaken and enacted, we must conclude the omission was intentional. [Citations omitted.]

Still recognized, of course, is the presumption that the best interests of the child would be served by granting custody to the natural parent. MCLA 722.25, *supra*. Indeed this remains a presumption of the strongest order and it must be seriously considered and heavily weighted in favor of the parent. Nevertheless if the "clear and convincing evidence" establishes that the best interest of the child is served by awarding custody to the third party, the presumption is rebutted.

The Child Custody Act details extensive criteria to be utilized in determining the best interests of the child, MCLA 722.23; MSA 25.312(3), and recognizes the parties' moral fitness and their love and affection for the children as factors to be considered. MCLA 722.23(a), (f); MSA 25.312(a), (f). Moreover, the statute now expressly requires a trial judge to indulge in a comparison between the existing home and the proposed alternative. MCLA 722.23(e); MSA 25.312(3)(e).

Rebuttal of the presumption in favor of parental custody no longer requires proof of parental unfitness, neglect or abandonment. The principles enunciated in *Ernst* and *Rincon* to that effect have been modified and repudiated by the Legislature and are not, since the enactment of the

Child Custody Act of 1970, a correct statement of the law in Michigan. [*Bahr v Bahr*, 60 Mich App 354, 359-360; 230 NW2d 430 (1975).]

Thus, while the case law from other jurisdictions may be helpful with respect to particular issues of unfitness, it cannot properly be adopted to overcome Michigan's statutory scheme for resolving child custody disputes.

## IX. FIT PARENT DETERMINATION

The remaining question is whether the trial court properly determined that defendant was not entitled to the status of a "fit" parent. Defendant argues that the trial court's consideration of his past neglect of Dionna was improper. Defendant asserts that *Troxel* and *Heltzel* discuss the constitutional presumption in favor of a fit parent in the present tense. Further, other case law supports a conclusion that the determination whether a parent is fit should not be based on past neglect. We cannot conclude that the trial court's findings were against the great weight of the evidence or that the court clearly erred in denying defendant the constitutionally protected status of a fit parent. *Harvey, supra* at 283.

As noted above, an essential premise of the fundamental constitutional right to raise one's children is that the parent is fit, that is, that the parent's conduct is consistent with the protected parental interest. *Heltzel, supra* at 19-20; Little *supra* at 11-11. Whether viewed as unfitness, neglect, or abandonment, defendant's conduct was inconsistent with a protected parental interest.

We emphasize that the court did not find defendant unfit with respect to his lifestyle or parental capabilities, either in the past or the present, in the sense that defendant would be denied credit for any rehabilitation

if the court were to consider his past conduct. Rather, the court based its conclusion on defendant's neglect or abandonment of Dionna at a critical time in her life and for an extended period. Although defendant takes issue with the trial court's overall conclusion, he does not challenge the trial court's factual findings.

It was undisputed that defendant did not take the initiative to provide support for Dionna or maintain contact with her after her mother died. It was not until the state filed a paternity action against defendant and he was ordered to pay child support that defendant took a renewed interest in Dionna and sought custody. During this time, Dionna relied on plaintiff as her surrogate parent. There is no question that plaintiff capably fulfilled the role of parent, to the extent that Dionna refers to plaintiff as "Mom."

In support of its conclusion that defendant was not entitled to the protected parental status, the court observed that although defendant may not have understood how to assert his parental rights, his misunderstanding did not make him any less neglectful. The court noted that defendant's failure to seek legal custody for six years of Dionna's life had an effect on her because, when her mother died, defendant had no legal rights to Dionna. He was the putative father, and, consequently, the guardian stepped in to seek custody of Dionna because there was no legal parent to provide care.

The court charged defendant with responsibility for failing to assert his legal rights as a father, in part because defendant is a retired police officer who worked in the court system, and he should have some knowledge or awareness of the process to acknowledge paternity. Nonetheless, for three years after Dionna's mother died, defendant sat passively and permitted the child to

form a mother-daughter bond with her older half-sister, the guardian. But for the fact that the guardian required medical coverage and sought assistance from the FIA, defendant's lack of involvement with Dionna would have likely continued.

While the court found no reason that defendant could not be a good father to Dionna, the court concluded that his neglect made him unfit under the totality of the circumstances such that he should not be accorded the constitutional deference set forth in *Heltzel*. We agree. Although not directly relevant to the issue of fitness, the court's statement in addressing the best interests under MCL 722.23(1), any other relevant factor, fully convinces us that no clear legal error justifies reversal in this case:

> This child went through a grieving process when her mother died. This child has had a significant loss in her life. She's attempted to fill that void of mom with the guardian. I think that factor causes the Court to be concerned about breaking down the bond between the guardian and the child. I think that's a factor that isn't listed that's something we have to consider. I think that weighs in favor of providing the mother—the guardian with really recognizing her as a full-fledged custodial parent. Because to deny the guardian the status as a custodial parent would cause the child to undergo a second loss of a mother; and I think that would be devastating.
>
> I also think that the child lost her father for a period of time. And I think that that is something that she grieved. And I think that to deny the father the status as a custodial parent, again, would cause the child loss, because I think that the child looked to the father for the first five-and-a-half years of her life. I think that the child would have gone through a grieving process when the father just simply inexplicably to her was gone. So this child lost a mother and a father in May of 1999. And the fact that she is so [] well-adjusted is a testament, I think, to the work that the

guardian has done with the child and the faith-based support that she has provided to the child. It is unbelievable to me how resilient this young lady is.

There is no question that child custody disputes can be the most heart-wrenching and agonizing controversies our courts are called upon to resolve. In many cases, it is difficult to achieve a unified result that serves the parties' interests and provides the fundamental support, care, and comfort to which every child is entitled. We are persuaded that in this case the court has properly applied the law to do so.

### X. CONCLUSION

The comprehensive scheme set forth in the Child Custody Act permits consideration of both the natural parent's fundamental liberty right to raise a child and a child's need for stability in determining the ultimate issue of the child's best interests. When the statutory presumption in favor of parental custody and the presumption in favor of the established custodial environment conflict, due process requires that the presumption remain in favor of custody with the parent in the absence of a showing of parental unfitness. *Heltzel, supra* at 23-24, 27-28. The best interests of the child are presumed to be served by granting custody to the parent, and that presumption must be weighed heavily in favor of the parent. To rebut the presumption, the third party must show by clear and convincing evidence that the best interests of the child require maintaining the established custodial environment. *Id.*

However, when a parent's conduct is inconsistent with the protected parental interest, that is, the parent is not fit, or has neglected or abandoned a child, the reasoning and holding of *Heltzel* do not govern. In this custody dispute, given defendant's failure to acknowl-

edge paternity during the first six years of the child's life and his total neglect of his child over a three-year period after the mother's death, we find no clear legal error in the placement of the burden of persuasion on defendant to show, by a preponderance of the evidence, that a change in the established custodial environment with the guardian was in the child's best interests.

Affirmed.