*In re* GOULD.

GRAHAM *v.* INGHAM PROBATE JUDGE.

INFANTS — JUVENILES — PROBATE COURTS — DEPENDENT AND NEG-
LECTED CHILD.
  Where petitioner in proceedings to determine the status and
    right to custody of a minor, produced evidence tending to
    show that the child's mother was dead, that the father had
    left him in the care of petitioner, the grandmother of said in-
    fant, that she and the grandfather had for a period of several
    years following the death of his mother. cared for the child,
    and the grandparents had stood in relation of parents to him
    and were willing to care for him, the court rightly found that
    the minor was not a neglected or dependent child within the
    meaning of Act No. 6, Pub. Acts 1907, as amended by Act No.
    310, Pub. Acts 1909.

Error to Ingham; Collingwood, J. Submitted June 18, 1912. ( Docket No. 126.) Decided July 22, 1912.

Lydia Graham presented to the probate court of Ingham county, sitting as juvenile court, a petition averring that

Graham Gould was a dependent and neglected child and praying for a determination of the question of his custody. Petitioner reviewed an order dismissing the petition by certiorari to the circuit court, which affirmed the order. Petitioner brings error. Affirmed.

*Edward Cahill,* for appellant.

*C. W. & W. S. Foster,* for appellee.

STONE, J. On November 11, 1911, appellant filed her petition in the probate court of Ingham county, sitting as a juvenile court, representing: That she is the grandmother of Graham Gould, who is the son of Durell L. Gould and Pearl Graham Gould, his wife, and that said Graham Gould was born at petitioner's home in Delta on August 30, 1903; that the mother of said Graham Gould, who was petitioner's daughter, died in the city of Chicago on May 29, 1908, leaving said Graham Gould as her only child, but left no estate; that the parents of said Graham Gould were married at Saginaw, Mich., on May 19, 1902, and for most of the time after their marriage, and until the death of the mother, lived with petitioner and her husband, George Graham; that their infant son, Graham, also lived with petitioner, not only when the parents were there, but at other times, when the parents were temporarily absent, their son was left in petitioner's care; that upon the death of his mother, the son, Graham, then but four years old, was left by his father in petitioner's care, and he so remained continuously until on or about July 9, 1911, when, at the suggestion of his father, he was permitted by petitioner to go on a visit to his aunt, his father's sister, Mrs. W. O. Robinson, who resides in Detroit, Mich.; that the exact length of said visit was not settled in advance, but it was understood that Graham should return in time for the opening of school in September, 1911; that about a month after Mrs. Robinson came to Lansing and called on petitioner, and asked her if she would consent to let Graham remain with her perma-

nently. Such consent was refused by petitioner and her husband, and Mrs. Robinson went away saying: "It will be just as you say." She did not, however, permit Graham to return, and he was kept in Detroit for some time against his own desires, and to his great grief and distress.

The petitioner then states: That she and her husband, the grandfather of said Graham, have become greatly attached to the child, and that by reason of his absence the grandfather became seriously ill, and was mentally unbalanced, and called constantly for his grandson, and that finally Graham was permitted to return to petitioner on October 24, 1911, and has since lived with her and her husband; that petitioner and her husband are abundantly able to care for and support their said grandchild in comfort, and to see that he is properly educated, and are willing and anxious to do so; that notwithstanding Mrs. Robinson and her husband are fully informed of the fact that petitioner and her husband have nurtured and cared for the said Graham, and have practically stood in place of parents to him since his birth, and particularly since the death of his mother, and are able and willing to continue to do so, and of the fact that Graham was greatly grieved and distressed by his enforced separation from his grandparents, and anxiously desires to live with them, and that his absence from his grandfather is a great affliction to the latter, and is probably dangerous to his life, yet Mrs. Robinson and her husband insist upon the return of Graham, and have threatened, in case he is not returned, to take him away, but whether by force or by stealth or some legal process petitioner is not informed; that the father of Graham has no home of his own, and has not had since his marriage to petitioner's daughter; that he is intemperate in his habits, and a spendthrift, and is not a fit or proper person to have the custody and care of his said son, and has long ago abandoned him to the care of petitioner and her husband, as before stated; that Graham has not proper parental care or guardianship, and is

a dependent child, and a neglected child within the meaning of section 1 of Act No. 6 of the Public Acts of 1907, Special Session, as amended. The petitioner prays the aid of the court in the premises, and that proceedings may be taken under said act to determine the status of said Graham Gould, and as to his care, custody, and guardianship as in said act provided; that, in case it shall be determined that said Graham is a dependent and neglected child within the meaning of said act, then that the court may award the care and custody of said child to petitioner.

The petition came on for hearing after due notice, and the father of the child was present. The petitioner was the only witness sworn in support of her petition. Among other things, she testified as follows:

" After the funeral, Mr. Gould, the father, went away, leaving the boy with us, and he has lived with us ever since. When his father went away, he made no arrangement with us about the boy—simply went away. He has never contributed anything towards his support, and has never sent him any money or clothing, never exercises any care or supervision over him. He has been to see him occasionally. Twice he has taken him to Detroit to visit his aunt, Mrs. W. O. Robinson. The last time was in July, 1911. * * * We are able to take care of Graham and want to do so. His father is not in a condition to take care of him. He has no home of his own, and has no property as far as I know, and his habits are bad. I know from his own confession that he drinks to excess and is a spendthrift. He has applied to us for money at different times. The last time was in January, 1911."

On cross-examination petitioner testified:

" We were willing to have Graham. * * * We never complained to Mr. Gould, nor asked him to take Graham away. We both loved him. He was the only son of our only child. We never asked his father to do anything towards his support. I don't mean to be understood that his father ran away, but that he went away without making any arrangements with us about him. We never asked for pay or expected any. We desired to have our daughter buried in Lansing. I never personally

knew of Mr. Gould's drinking to excess except on two occasions."

The entire testimony is in the record, and has been read by us. At the hearing the judge of probate made the following finding and determination:

" And the court having listened to the testimony given on behalf of the petitioner, and the argument of counsel, thereupon it appearing to the court, after due consideration of the pleadings and proofs, that the child, Graham Gould, is not a dependent and neglected child, without proper parental care or guardianship within the meaning of section 1 of Act 6 of the General Acts passed at the Special Session of 1907, as amended, and it appearing to the court, after a full investigation of the facts and circumstances, that said Graham Gould is not a dependent, neglected child; it is therefore ordered that the petition be dismissed, and all relief as prayed therein be denied."

Whereupon the petitioner removed said proceedings to the circuit court by writ of certiorari, alleging the following errors in her affidavit:

(1) That the probate judge erred in holding and deciding that the child, Graham Gould, was not a dependent and neglected child, without proper parental care or guardianship.

(2) That the probate judge erred in refusing to take jurisdiction of the subject-matter of deponent's petition, and in refusing to grant the relief therein prayed.

(3) That the probate judge erred in dismissing deponent's petition, and in denying the relief therein prayed.

The circuit court dismissed the writ of certiorari, and gave the following reasons for such course:

"The decision of the probate judge sitting in such matters in the juvenile division is final, and cannot be reviewed on appeal. The method chosen to bring the proceedings of the probate court before this court was by writ of certiorari, and only those errors assigned in the affidavit can be considered. A writ of certiorari brings the proceedings of the lower court for a review of the questions of law, but not of fact. . The return of the probate judge is full and complete. If the lower court had jurisdiction, its discretionary power cannot be inquired into.

This disposes of the first assignment of error. The second assignment of error charges that the court refused to take jurisdiction of the subject-matter of the petition. It is conceded that the probate court has jurisdiction in this class of cases, and that in this case the proper steps were taken up to and including the introduction of testimony in open court. Petitioner claims that inasmuch as the petition was in due form, and followed by the sworn testimony of petitioner, which was not controverted by testimony of the opposition, even though the father was in court, the finding of the court that Graham Gould was not a dependent child amounted to a refusal of the probate court to take jurisdiction. The burden of proof rested on the petitioner. The presumption was that Graham Gould was not a dependent child, and that presumption was not overcome by the petitioner, or by the report of the county agent. Whether or not it was overcome by the proofs in the case is a matter for the determination of the probate judge who heard the case. He certifies in his return that he did take jurisdiction of the case as presented by the petition and proofs, and determined the case upon the petition and proofs so submitted to him in open court. This court cannot go behind such a return. This disposes of the second and third assignments of error. The writ of certiorari is dismissed."

The petitioner and appellant moved for a rehearing, which was denied.

The case is here upon writ of error, and error is assigned upon the order and determination of the circuit court, and upon the refusal of the motion for a rehearing. In our view of the case a more specific statement of the assignments of error is not necessary.

Section 1 of the act as amended (see Act No. 310, Pub. Acts 1909) relating to this subject, provides as follows:

" For the purpose of this act the words ' dependent child,' and ' neglected child ' shall mean any child who for any reason is destitute or homeless or abandoned or dependent upon the public for support, or who has not proper parental care or guardianship, or who habitually begs," etc.

A careful reading of this record leads us to the conclusion that by the undisputed evidence this child was not shown to be destitute, homeless, or abandoned, or dependent upon the public for support, or one who has not proper parental care or guardianship, and therefore does not fall within the statutory definition of "a dependent or neglected child." We cannot agree with counsel for appellant that the probate judge refused to entertain jurisdiction of the case. As we read the record, he did entertain the petition and heard the evidence and decided the matter upon its merits, dismissing the petition for the reason that the child was not a dependent or neglected child within the meaning of the statute, and under the evidence in the case, thus passing both upon the law and the facts. We not only think that there was evidence to warrant this conclusion, but we are also of opinion that the conclusion was fully justified by the evidence. By appellant's own showing she and her husband "have practically stood in place of parents to him (Graham) since his birth, and particularly since the death of his mother," more than four years ago. It is undisputed that he has an excellent home with his grandparents, who have heretofore cared for, and are anxious to care for him in the future. All this has been done with at least the tacit consent of the father, who has never been asked to pay for such care and support. Is not such care "proper parental care or guardianship?" We think so. We are of opinion that such a case is not within the purview of the statute. It should be borne in mind that this is not a habeas corpus proceeding to determine who shall have the custody of this child, but it is a proceeding under the statute instituted before the only judicial officer clothed by the act with the power of exercising discretion in the case, and disposition of that class of children mentioned in the statute. *Van Leuven* v. *Ingham Circuit Judge*, 166 Mich. 115–117 (131 N. W. 531).

We think that the circuit court reached the right result

in the case, and the order and judgment below are affirmed, with costs to the appellee.

MOORE, C. J., and STEERE, McALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred. BLAIR, J., did not sit.