*In re* GOULD.

1. HABEAS CORPUS—APPEAL AND ERROR—CERTIORARI.

On certiorari to review habeas corpus proceedings for the custody of a minor, the court cannot review findings of fact of the trial judge determining what is for the best interest of the child.

2. SAME—ADOPTION—RES JUDICATA.

Where a minor child had for several years following the death of his mother, resided with his grandparents, being abandoned by his father, who was addicted to drink, and who made no attempt to claim the child, but after proceedings had been instituted in juvenile court to determine the right of the grandparents to custody, consented in writing to his sister and her husband adopting the child, and where proceedings were meanwhile instituted in probate court of another county for the adoption of the infant by such sister and husband, this proceeding being resorted to for the purpose of surreptitiously forestalling the action of a court of co-ordinate jurisdiction, the rights conferred by such consent and adoption were no greater than the father had; the principal question being, what do the best interests of the infant require.

3. SAME—CUSTODY OF MINOR.

*Prima facie* the father is entitled to the custody and control of his child; subject, however, to considerations affecting the welfare and best interest of the infant.[1]

---

[1] As to the denial of the custody of a child to parent for its well-being, see note in 41 L. R. A. ( N. S.) 564.

4. SAME.
   While the statute (Act No. 121, Pub. Acts 1911), requires the consent of a minor to his adoption if he is upwards of ten years of age, there is no rule preventing the court from considering the wishes of a young child in passing upon a proposed change of custody.

5. SAME.
   In the absence of evidence that the infant would benefit by a change of custody, or that its best interests required a change, *held* that the grandparents were entitled to the right.

Certiorari to Ingham; Collingwood, J. Submitted November 21, 1912. (Docket No. 158.) Decided April 8, 1913.

Habeas corpus by Nina L. Robinson against George Graham and Lydia Graham to determine the right of custody to George Graham Gould, an infant. An order awarding the custody of the child to petitioner is reviewed by respondents on writ of certiorari. Reversed.

*Edward Cahill* and *Cummins & Nichols*, for appellants.

*C. W. & W. S. Foster*, for appellee.

STEERE, C. J. This case is presented by a writ of certiorari to review the action of the Ingham county circuit court in certain habeas corpus proceedings involving a contention between aunt and grandparents over the custody of their nephew and grandson, George Graham Gould, a boy nine years of age.

On August 19, 1912, said George Graham Gould was in the care and custody of, and resided with, his grandparents, George and Lydia Graham, at Lansing, Mich., when his aunt, Nina L. Robinson, of Detroit, Mich., presented a petition to, and obtained from, the circuit judge of Ingham county a writ of habeas corpus to inquire into the cause of his detention by his grandparents, alleging in her verified petition that she and her husband had legally adopted him and were by law entitled to his care and cus-

tody. The grandparents made return to said writ, admitting that the boy was in their custody and under their control, alleging their right thereto, and stating, among other things in substantiation of their claim, that, upon the death of the mother of said child, he was abandoned by his father, Durell L. Gould, since which time he had lived with, and been cared for by, them, they standing in the relation of parents to him; that they had never consented to his adoption by petitioner or any other person; and denying that petitioner had any legal right to the custody of their grandchild.

A hearing was had in open court upon the petition, writ, and return, all the parties in interest being present, and a small amount of testimony was then taken. Petitioner rested her right to the custody of the child on adoption papers issued to her and her husband by the Wayne county probate court, produced and properly proven, showing that on November 6, 1911, she and her husband, William O. Robinson, had, with the written consent of the father, adopted the child according to the statute authorizing such proceedings. At the conclusion of said hearing, the circuit court determined that petitioner and her husband were, by such adoption, the legal parents of the child, and ordered that he be surrendered to them by his grandparents, who thereupon obtained a writ of certiorari from this court to review such determination and order.

A contention over the custody of this boy between the same parties in fact and purpose, but not in form, was before this court under a different guise in the case of *Graham* v. *Ingham Probate Judge*, 171 Mich. 540 (137 N. W. 223). The facts in this case are conceded by counsel to be the same as in that case, so far as they go, and are so well stated there that repetition here is unnecessary. A small amount of additional evidence, taken in this case, consists of proof of the adoption proceedings heretofore referred to, and the testimony of petitioner and the grandmother, supplementing in detail certain matters only presented in a general way in the former case, which adds

little of importance to what there appears, but will be adverted to later, so far as material.

In the case of *Graham* v. *Ingham Probate Judge, supra,* the grandparents, as result of some friction which had arisen over the custody of the boy, in which the aunt and grandmother each thought that the other had taken undue advantage of permission given for him to visit the other, instituted proceedings before the probate judge of Ingham county, under Public Act No. 6, extra session of 1907, as amended by Act No. 310, Public Acts of 1909, for the purpose of having the boy adjudicated a dependent and neglected child, on the theory that the court might and would thereafter make an order legally awarding his care and custody to them.  They had him with them and were tenderly caring for him at that time.  The probate court, circuit court, and this court were unable to find that the child had become destitute, homeless, abandoned, or dependent upon the public for support, or habitually begged, or was without proper parental care or guardianship, within the meaning of that act, because it appeared that the petitioners themselves had at all times given him the best of parental care, support, schooling, training and guardianship, and therefore denied the relief prayed for, saying:

"It is undisputed that he has an excellent home with his grandparents, who have heretofore cared for, and are anxious to care for him in the future."

It is the contention of petitioner's counsel that said decision thoroughly adjudicated the status of the father in relation to his child and determined that the father not only had not abandoned or neglected his offspring, but was entitled to his custody, and, therefore, as surviving parent, could legally consent to and authenticate the child's adoption by the petitioner and her husband.  This view appears to have been taken by the trial court in passing upon the questions raised in that proceeding.

The right of the father to the child as against the grand-

parents was not involved in that case as a controlling question, and was not directly passed upon. The case was not, in its true legal aspect, a proceeding to determine between contending parties who should have the custody of the child. It did not raise the question of his being taken from where he was, by a contending claimant, but called upon the court to first determine whether or not he was of the class of children mentioned in the statute, and, if so, then, under the statute, the court was asked to confirm existing conditions and leave him where he was, in the custody of his grandparents. The determination that he was not of that class was not based upon anything the father had done or not done with or for his child. There is little dispute over the facts in the present case. The trial court in awarding the custody of the child did not, as a matter of fact, determine that the best interests of the child made it imperative that he should be awarded to the petitioner and her husband, but concluded that, as a matter of law, under the letters of adoption, it was imperative to make such award.

Had the court found, as a paramount consideration, that the welfare and best interests of the child did in fact demand that he be taken from the grandparents and turned over to the petitioner, this court could not in this proceeding review the trial court's finding of facts in that particular. *Corrie* v. *Corrie*, 42 Mich. 509 (4 N. W. 213); *In re Sneden*, 105 Mich. 61 (62 N. W. 1009, 55 Am. St. Rep. 435); *Carpenter* v. *Carpenter*, 149 Mich. 138 (112 N. W. 748). But the judgment was not based on conflicting evidence, and the questions presented for determination here are questions of law applied to undisputed facts. The decision of the trial court was:

"The papers showing the adoption of George Graham Gould by William O. Robinson and Nina L. Robinson, his wife, are legal and binding."

Therefore we are to consider whether the adoption papers obtained by petitioner and her husband from the

Wayne county probate court control the disposition of the child under the undisputed facts in this case. It is undisputed that they were obtained without the knowledge or consent of the boy or his grandparents, who at the time practically stood, as this court held in the former case, temporarily, at least, *in loco parentis* to him; that he and they then were in, and residents of, Lansing, Ingham county; and the juvenile court of the latter county, with jurisdiction to act, was, at the very time the adoption papers were obtained in Wayne county, engaged, with the boy before it, in a judicial inquiry as to his legal status. Those proceedings were pending from November 11 until December 7, 1911, and the petition for adoption was filed and order made by the Wayne county probate court on November 16, 1911. The latter proceeding was manifestly resorted to for the purpose of surreptitiously forestalling the action of a court of co-ordinate jurisdiction in determining the status of the child. It can with reason be urged that the father could and should have first asserted his authority and demanded an adjudication as to his parental right, and the award to him of his son, in the court first taking and then exercising jurisdiction, before going to another court to give him away.

It is shown that the boy is the only child of the only daughter of his grandparents, in whose home he was born, where he resided much of the time until the death of his mother; that on her death she was buried from their home, at their expense, and, after the funeral, the father went away leaving the child with them, without making any arrangements regarding him or any provision for his care and maintenance; that the child has lived with, been cared for, and supported by them since as their own child, and has only been absent twice, for a comparatively short time, on visits to his aunt, the petitioner, where he went with his father with their consent; that the father never contributed anything for the child's support during this time, exercised no care or supervision over him, but visited the home of the grandparents occa-

sionally and saw him, being absent most of the time and his whereabouts unknown; that he is inclined to drink to excess, has no home of his own and no property, and at different times appealed to the grandparents of his son for money. The father now personally makes no claim to his son, and could not. So far as he has asserted himself at all, he has declared he does not want him by signing consent to his adoption and forever foreclosing all paternal rights. The only figure he cuts in this contention is to assert himself to the extent of assigning what might be likened to a chose in action for his son to petitioner, and leaving it to her to litigate and make the most of. By merely signing the common form of consent to adoption, he is attempting to take his offspring from one doorstep and drop him on another; to take him from a proven home where he once left him, and where the testimony shows he was tenderly cared for and nurtured during his early childhood, and transfer him to another, possibly equally good, but new and untried. The father's legal and equitable rights, if equity is to be thought of in that connection, are limited, so far as the proofs show, to having begotten the child in lawful wedlock. All the rights the petitioner has come to her from the father and can be no greater than he had.

*Prima facie* the father was, and by the adoption to which he consented petitioner is, entitled to the custody of the child. The law recognizes the rights of the father because it recognizes the natural duties and obligations of the father. The father's right to and authority over his child are secure and inviolable so long as he properly discharges the correlative duties.

But the absolute power of the father over his infant children, to treat them as property and dispose of them as he sees fit because they are his, which was once recognized under the Roman law of *patria potestas* and in the codes of early nations, no longer obtains. Paternal authority is subordinate to the supreme power of the State. Every child born in the United States has, from the time it comes

into existence, a birthright of citizenship which vests it with rights and privileges, entitling it to governmental protection—

"And such government is obligated by its duty of protection, to consult the welfare, comfort, and interests of such child in regulating its custody during the period of its minority." *Mercein* v. *People*, 25 Wend. (N. Y.) 64 (35 Am. Dec. 653).

The power of parental control, though recognized as a natural right and protected when properly exercised, is by no means an inalienable one. When the "right of custody" is involved between respective claimants for a child, the courts, though in the first instance recognizing *prima facie* rights of relationship, in the final test are not strictly bound by demands founded upon purely technical claims or naked legal rights, but may and should, in making the award, be governed by the paramount consideration of what is really demanded by the best interests of the child. *Corrie* v. *Corrie, supra; In re Heather Children*, 50 Mich. 261 (15 N. W. 487); *Chapsky* v. *Wood*, 26 Kan. 650 (40 Am. Rep. 321); *Richards* v. *Collins*, 45 N. J. Eq. 283 (17 Atl. 831, 14 Am. Dec. 726).

It is a well-settled rule that the personal attachments and wishes of children, when of sufficient capacity to form them, are important elements to consider where a parent seeks to reclaim a child voluntarily allowed to live for any considerable time in the family of others, and thus form home ties and an affection for those who have cared for it there. *Richards* v. *Collins, supra.* In this case the boy was not consulted in the matter of his adoption, and what his desire may have been is not disclosed. He was then between 8 and 9 years of age. Had he been 10 years old there could be no adoption without his express consent. Section 2, subd. "h," Act No. 121, Pub. Acts 1911. He will reach that age next August, having been born August 30, 1903. While the statute fixes the age of consent at 10 years, it in no way precludes the court from considering and giving weight to the wishes and attachments of

an intelligent child under that age, when passing upon a proposed change of the child's custody.

This is not a case where the father, unfortunately separated from his offspring for a time by adverse circumstances, now, prompted by a parent's love and yearning for the companionship of his only child, seeks his custody that he may, by association in the relation of father and son, strengthen the blood ties of closest kinship, himself offering to care for, support, educate, and rear his son for the mutual benefit and happiness of both. Were that the proposition before the court, and were the father shown to be a moral man of fit character with not only the disposition, but the ability and means, to properly discharge his parental obligations, a very different and much more delicate and difficult problem would confront the court. But this father asks nothing of the kind, in fact, asks nothing, and is only in the case as a transmission line to help out his sister, for reasons, if any, which are not shown.

It is shown that petitioner is a married woman with one child, a daughter, living in Detroit with her husband in a good home of her own, and the finding of the probate court of their home county that they are of good moral character and sufficient ability to support and educate said child, their home being a suitable one for him, is not questioned. Neither is there any reason to question her sincerity. She evidently has taken a fancy to the boy, wants him as a companion to her daughter that the two cousins may grow up together, and to that end is ready and willing to assume the burden with all its responsibilities.

The ability and fitness of the respective contending parties is not seriously questioned in the record. We may assume petitioner and her husband give every assurance that the child would be properly cared for in a suitable home if they were given his custody. It is conclusively shown that the grandparents have done so and are doing so. In their case it does not rest in probabilities. While with them, the boy, during the earlier

years of his tender childhood has lacked nothing which a child should have. He has been patiently and affectionately nurtured and tended and all his wants provided for. When he was small and helpless and the burden of his rearing heaviest, they faithfully and freely discharged every parental duty towards him. With the passing years of patient watching over him as the little child of their dead daughter, he grew in their affection and became to them as their own child.

Not only do the interest and affection they have shown, and the care and support they have given him, entitle them to some consideration as against a prospect, but they give assurances for the future. What they have done tends to show what they are willing to and will do. Their pecuniary condition is ample to enable them to provide for his maintenance and education during minority, and much more if so inclined. There is nothing to indicate any financial advantage to him in a change of custody, or that he will in any way be better educated, trained, or treated, or his welfare in any particular be promoted if he is taken from his present home and compelled to go with petitioner. He is well provided for now, and, in the language of Justice Brewer in *Chapsky* v. *Wood, supra,*

" ' Let well enough alone ' is an axiom founded on abundant experience."

The case of *Pool* v. *Gott*, 14 Law Reporter, 269 (a Massachusetts case apparently not regularly published in the reports of that State), is instructive, well in point here, and involves a very similar issue. Pool, the petitioner for writ of habeas corpus, had married the only daughter of respondents, and, she having died, their infant child was left by petitioner in the custody of its grandparents—a course agreeable to all parties, but without any definite arrangements being made as to length of time the child should remain or who should provide for its maintenance. The grandparents supported and cared for the child as their own. Some years later Pool remarried, and, having

established a home for himself, sought to reclaim his child. The opinion in that case, delivered by Chief Justice Shaw, radiates the prevalent tone of our best authorities on the interesting and delicate subject of the right of custody of infants as between near relatives. On a review of the whole case from every angle, it was held that the child should remain in the custody of its grandparents, to whom it was devotedly attached and with whom it preferred to live; the leading principle being that, when the right of the parent is not clear and imperative, the best interests and happiness of the child must always control the decision of the court.

Under the undisputed facts in this case, petitioner's letters of adoption do not, as a matter of law, make it imperative for the court to grant the writ and order the child from his present home into her custody.

The judgment is reversed, with costs.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.