CORRIGAN, J.
(concurring in part and dissenting in part). I concur in parts I, II, III(B), and III(D) of the majority opinion. I agree with the majority’s conclusion that “fit” parents benefit from a constitutional presumption that they will “act in the best interests of their children.” Troxel v Granville, 530 US 57, 68; 120 S Ct 2054; 147 L Ed 2d 49 (2000) (plurality opinion of *281 O’Connor, J.); see ante at 262. I further agree that, when prior court proceedings govern child custody— such as child protective proceedings under the juvenile code, MCL 712A.1 et seq., or, as in this case, guardianship proceedings under part 2 of article V of the Estates and Protected Individuals Code (EPIC), MCL 700.5201 et seq. — these proceedings generally have preclusive effect and the prior court has superior jurisdiction. A parent cannot circumvent these proceedings by seeking custody under the Child Custody Act (CCA), MCL 722.21 et seq. See ante at 276.
I do not agree with the majority that the constitutional presumption in favor of fit parents imbues the presumption in MCL 722.25(1) of the CCA — which applies to all parents, not just fit ones — with heightened constitutional meaning so that it always prevails over the mandate concerning established custodial environments in MCL 722.27(l)(c). I do agree that constitutional considerations require the presumption in § 5(1) to predominate in the case of a fit parent. However, when a parent’s lack of fitness has been previously established or admitted and a third party has an established custodial environment with the child, that parent should not benefit from the presumption in § 5(1). Section 7(l)(c) governs instead.
i. procedural background
As the majority explains in part, ante at 251-256, this case began in 2002 when defendant and her husband— who were drug-addicted, unemployed, and unable to care for their four young children — voluntarily relinquished custody of the children to plaintiffs. Plaintiffs, who are the children’s aunt and uncle, had already been caring for the children intermittently. In November *282 2002, defendant and her husband petitioned the court[1] to appoint plaintiffs as limited guardians for the children, stating: “We are currently in active addiction to crack cocaine and are unable to care for our children until we seek treatment.” Accordingly, they voluntarily suspended their parental rights and the court established a limited guardianship with plaintiffs. Plaintiffs thus gained rights and responsibilities akin to those of a parent with regard to the children under MCL 700.5215, which states, in most pertinent part: “A minor’s guardian has the powers and responsibilities of a parent who is not deprived of custody of the parent’s minor and unemancipated child. . . .” See MCL 700.5206(4).[2]
*283 Defendant could have regained custody of the children by substantially complying with her placement plan, in which she promised to seek drug treatment and provide a drug-free household for the children. Instead, she and her husband continued their drug use and became involved in crime. Although they petitioned to terminate the limited guardianship in May 2003, the court denied their petition and, instead, ordered them to continue drug treatment, verify their employment, and maintain more regular visitation with the children. Nonetheless, they returned to crime. They were arrested. After being released on bail, they stole a car and fled the police.
In June 2003, plaintiffs petitioned the court to appoint them full guardians.[3] Plaintiffs cited their fear for the children’s safety and stated that the police advised them to seek a full guardianship and suspension of parental visits. The court-appointed guardian ad litem for the children investigated and confirmed that defendant and her husband were still using drugs, had lost their jobs, were not paying rent, and had fled the police. On June 17, 2003, the court conducted a hearing on plaintiffs’ petition. Neither parent appeared and their whereabouts were unknown. The court suspended their visitation rights until further order. On July 16, 2003, the court appointed plaintiffs full guardians of the children.
Defendant and her husband were subsequently rearrested and incarcerated. Defendant apparently skipped bail again after her second release. She was ultimately *284 convicted and imprisoned in August 2004. In July 2005, after her release from prison, defendant sought visitation with her children. By this time she had not seen them in over two years. The court restored her visitation rights in November 2005 and defendant began paying a small amount of child support. After several months of successful visits and regular child support payments, the court ordered expanded, unsupervised parenting time to begin in May 2006, with overnight visits at defendant’s home in Indiana to begin in July 2006. By this time, the children had been living with plaintiffs in Michigan for about four years.
In May 2006, apparently prompted by the order increasing defendant’s visitation rights, plaintiffs exercised their rights under MCL 722.26b to seek custody under the CCA and to stay the guardianship proceedings. MCL 722.26b(4). Defendant counterclaimed for custody under the CCA. The court employed the now-outdated rubric in Mason v Simmons, 267 Mich App 188; 704 NW2d 104 (2005), to declare defendant unfit and award custody to plaintiffs.[4]
II. SUPERIOR JURISDICTION OF PRIOR PROCEEDINGS
First, I agree that the guardianship proceedings here precluded defendant from separately seeking custody under the CCA. Ante at 276. Generally, when two courts have concurrent jurisdiction, the first court that acquired jurisdiction retains it until the matter is fully resolved. See Schell v Schell, 257 Mich 85, 88; 241 NW 223 (1932).[5] Accordingly, if a parent’s fitness or custody *285 rights are governed by an ongoing proceeding — such as the guardianship proceeding here or a child protective proceeding under the juvenile code — the parent may not separately invoke the circuit court’s jurisdiction by filing a simultaneous custody action under the CCA.
Because this holding is a crucial element of the majority opinion, I offer an example to illustrate the importance of this jurisdictional rule. Child protective proceedings under the juvenile code are designed to protect children from abuse and neglect — often by temporarily removing them from their parents’ custody under emergency conditions — while aiding parents to rectify unfit conditions and regain custody of their children. The purposes of these proceedings would be nullified if a parent could avoid them by regaining custody in a separate proceeding under the CCA.
The juvenile code protects children who, among other things, are subjected to abuse, neglect, or unfit living conditions. MCL 712A.2(b).[6] The code empowers *286 the Department of Human Services (DHS) to petition for temporary removal of a child from his parent’s home for these reasons. The court may authorize the petition “upon a showing of probable cause that 1 or more of the allegations in the petition are true and fall within the provisions of section 2(b) . . ..” MCL 712A.13a(2). If the court orders the child’s removal from the parent’s custody and orders the child into court or state custody, a process begins during which the DHS works with the parent, if possible, to restore custody with the parent.[7] As I will explain further, this process is statutorily designed to take up to one year. See MCL 712A.19a(l). Within 30 days of the child’s removal, and every 90 days thereafter, the DHS must provide service plans detailing its efforts and the services provided to prevent removal or to rectify the conditions that caused removal, as well as the efforts to be made and services to be offered to facilitate the child’s return to his parent, if appropriate. MCL 712A.18f. The court generally reviews the case within 182 days of the child’s removal and every 91 days thereafter. MCL 712A.19(3). At each *287 review hearing, the court must evaluate the parent’s compliance with the service plan, MCL 712A.19(6) and (7), and may order additional services or actions, MCL 712A.19(7)(a).
If a child remains outside his home, the court must conduct a permanency planning hearing within one year of the child’s removal. MCL 712A.19a(l). At that hearing, if the court determines that the “return of the child to his or her parent would not cause a substantial risk of harm to the child’s life, physical health, or mental well-being, the court shall order the child returned to his or her parent.” MCL 712A.19a(5). If the court determines that the parent poses a substantial risk to the child, it may order the DHS to initiate proceedings to terminate parental rights. MCL 712A.19a(6). If termination is not in the child’s best interests, the court may also consider alternative placement plans, including a guardianship. MCL 712A.19a(7). Crucially, the burden of proof is elevated to clear and convincing evidence only at this final stage, the termination of parental rights proceeding. MCL 712A.19b(3).
Because of the different evidentiary standards in the CCA and the juvenile code, a parent could subvert child protective proceedings if the Schell rule did not mandate superior jurisdiction in the child protective proceedings. This is because, as noted, the requisite conditions for removal of a child from his parent’s custody under MCL 712A.2(b) of the juvenile code must be proved by “a showing of probable cause,” MCL 712A.13a(2). But, particularly under the majority’s interpretation of the CCA, the DHS or a third party custodian can prevent a parent from regaining custody under the CCA only by rebutting the parental presumption by clear and convincing evidence. MCL 722.25(1). *288 Because the CCA creates a higher burden for a third party seeking custody, the parent could regain custody under the CCA; while the initial conditions warranting emergency removal may have been supported by probable cause, the DHS may not yet have gathered enough evidence to meet the heightened clear and convincing evidence standard of the statutory presumption in MCL 722.25(1), as would be necessary to prevent the parent from immediately regaining custody. Thus, if the parent could seek custody under the CCA, the Legislature’s carefully crafted child protective process — which both protects children and ultimately benefits willing parents — could be nullified.
A related problem involving guardianships would arise if a parent could invoke the court’s jurisdiction under the CCA although the parent’s rights were eligible for termination under the juvenile code. Indeed, although the court may conclude that a child should not be returned to his parent because the parent poses an ongoing substantial risk of harm, the court may place the child with a permanent guardian in lieu of terminating the parent’s rights. MCL 712A.19a(6) and (7)(c). That guardianship may continue until the child is emancipated, MCL 712A.19a(7)(c), and the guardian gains all the traditional parent-like rights and duties inherent in a guardianship established under EPIC, MCL 712A.19a(8). If the natural parent could nonetheless obtain custody under the CCA, the purposes and terms of these pre-termination guardianships would be obviated. Particularly under the majority’s rule, the parent could file under the CCA to shift the burden to the guardian, thereby requiring the guardian to prove by clear and convincing evidence that placement with the parent is not in the child’s best interests. The court’s determination during the child protective proceedings that the parent posed a significant harm to his *289 child would become irrelevant and the guardian would be forced to litigate in defense of his appointment. In addition to subverting the statutory scheme in favor of pre-termination guardianships, this result likely would cause voluntary guardians to decide against accepting guardianship appointments.[8]
In sum, important, practical reasons undergird the Schell rule and the principles of collateral estoppel addressed by the majority. Once a court attains jurisdiction of a child’s custody under the juvenile code or EPIC, as the first court to attain jurisdiction over these matters, it retains jurisdiction until the proceeding is closed. Schell, 257 Mich at 88. A parent cannot simply file separately for custody under the CCA and regain custody by invoking the parental presumption. Permitting a parent to do so would undermine the very purposes of the other statutory schemes addressing custody and child welfare, not to mention the havoc and confusion in courts attempting to properly protect children and adjudicate parental rights under the correct statutes.
Finally, the CCA itself confirms this result by providing a single, explicit exception to the normal application of the Schell rule. MCL 722.26b, which grants a guardian standing to seek custody under the CCA, provides the only apparent context in which a CCA action may override decisions of another court with ongoing jurisdiction over the parties’ rights to the children.[9] MCL *290 722.26b(4) explicitly states that, when a guardian seeks custody, “guardianship proceedings concerning that child in the probate court are stayed until disposition of the child custody action” and permits an ensuing circuit court order to supersede probate court orders concerning the guardianship of the child. The CCA does not, in turn, permit a parent with the limited rights inherent in guardianship proceedings to sue for custody or stay the guardianship proceedings. Rather, as the majority notes, a parent’s recourse would lie in his explicit right to petition the probate court to terminate the guardianship under MCL 700.5208.
III. SECTIONS 5(1) AND 7(l)(c) OF THE CHILD CUSTODY ACT
Although I agree with the majority on the point just discussed, I disagree with the majority’s resolution of the apparent conflict between MCL 722.25(1) and MCL 722.27(l)(c) as it applies here, where the guardians invoked MCL 722.26b. I certainly agree with the majority, ante at 257, that the “fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.” Santosky v Kramer, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982). And thus, to satisfy constitutional due process standards, the state “must provide the parents with fundamentally fair procedures.” Id. at 754; see also ante at 257. But, when a parent’s unfitness has been established, as it was here, fundamentally fair procedures do not require the court to give that parent the full benefit of the parental presumption. Rather, a parent’s rights to a child are limited when he has failed in his duties to that child. In the majority’s own words, neither Troxel nor the majority opinion “grant[s] unfit parents consti *291 tutional rights to their children other than due process rights.” Ante at 276 (emphasis added).
Thus, the presumption that a parent will act in his child’s best interests is a conditional presumption that applies only “so long as a parent adequately cares for” his child. Troxel, 530 US at 68 (opinion by O’Connor, J.). Indeed, the parental right derives from a parent’s “ ‘high duty’ ” to care for his children. Id. (citation omitted).[10] Accordingly, when a parent fails to care adequately for his child — and particularly when third parties carry out *292 the parent’s high duty in his stead — the automatic presumption in favor of the parent no longer strictly applies. Therefore, although fit parents benefit from a constitutional presumption that they will “act in the best interests of their children,” Troxel, 530 US at 68; ante at 262, the constitutional presumption in favor of fit parents does not imbue the presumption in § 5(1) of the CCA with heightened constitutional meaning so that it always prevails over the mandate concerning established custodial environments in § 7(l)(c) without regard to a parent’s fitness.
MCL 722.25(1) states that if a child custody dispute “is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence.” But the powers of the circuit court in any action under the CCA are also governed by MCL 722.27, which circumscribes the orders a court may enter regarding a complaint for custody. MCL 722.27(1) states, in pertinent part:
*293 If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
(a) Award the custody of the child to 1 or more of the parties involved or to others and provide for payment of support for the child, until the child reaches 18 years of age----
(b) Provide for reasonable parenting time of the child by the parties involved, by the maternal or paternal grandparents, or by others, by general or specific terms and conditions. ...
(c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances .... The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.
(d) Utilize a guardian ad litem or the community resources in behavioral sciences and other professions in the investigation and study of custody disputes and consider their recommendations for the resolution of the disputes.
(e) Take any other action considered to be necessary in a particular child custody dispute.
MCL 722.27(l)(c) clearly mandates that the court “shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is *294 presented clear and convincing evidence that it is in the best interest of the child.”[11] (Emphasis added.) Thus, § (7)(l)(c) expressly deprives the court of the power to change the established custodial environment absent the requisite showing by clear and convincing evidence that such a change is in the child’s best interest.[12] Yet the majority directs circuit courts to ignore this man *295 date in all cases where any natural parent — except one whose parental rights were previously terminated or suspended, ante at 277 — seeks custody from a third party with an established custodial environment.
But in light of the strong mandate expressed in § 7(l)(c), and because the constitutional parental presumption applies only to fit parents, I would hold that the presumption in § 5(1) prevails over the mandate in § 7(l)(c) by necessity only when a fit parent seeks custody from a third person with an established custodial environment. Where an unfit parent is concerned, no statutory or constitutional reason exists to simply ignore § 7(l)(c) if a third person has an established custodial environment.
Further, because the constitutional parental presumption applies only to fit parents, a parent’s fitness remains relevant. I acknowledge that the CCA does not refer to fitness. See ante at 273. But this bare observation does not adequately consider the various proceedings at which a parent’s fitness may be questioned— indeed, it does not consider the very proceedings that likely led to a custodial environment being established with a third party custodian in the first place.
Troxel equated a fit parent with one who “adequately cares for his or her children.” Troxel, 530 US at 68 (opinion by O’Connor, J.). It illustrated the presumption in favor of fit parents as “a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life’s difficult decisions.” Id. at 68 (quotation marks and citation omit *296 ted). Various proceedings call upon courts to make findings, or call upon parents to make admissions, counter to these presumptions in order to fulfill the state’s duties to protect its children. The child protective proceedings described above and guardianship proceedings like this case are good examples of proceedings that, by their nature, may establish a parent’s unfitness. Principles of collateral estoppel generally prevent a party from relitigating an issue already established in a prior proceeding. See Storey v Meijer, Inc, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988). Indeed, as the majority observes, this Court has “long recognized” the applicability of collateral estoppel, including to “probate courts orders such as the guardianship orders in this case.” Ante at 276, citing Chapin v Chapin, 229 Mich 515; 201 NW 530 (1924). Such orders “are res judicata of the matters involved and cannot be attacked collaterally.” In re Ives, 314 Mich 690, 696; 23 NW2d 131 (1946). Further, permitting a parent to avoid past findings or admissions of unfitness and nonetheless gain a constitutional advantage despite unfitness clearly runs the risk of endangering the child and compromising state laws aimed at upholding the state’s duties to its child citizens. Most significant to our purposes, if a parent’s lack of fitness has been established, there is no longer a constitutional reason to ignore the mandate in MCL 722.27(l)(c) in favor of MCL 722.25(1). Accordingly, I conclude that in cases where a parent’s lack of fitness was either determined or admitted in a prior proceeding, the parent cannot later claim fitness and benefit from the presumption in § 5(1) in a proceeding under the CCA.[13]
*298 Here, defendant and her husband admitted unfitness in 2002 when they sought the limited guardianship because they were jobless, addicted to crack, and unable to care for their children. They could have regained custody of the children by substantially complying with their placement plan. Instead, they relapsed, continued their involvement with crime, and failed to appear at the hearing on plaintiffs’ petition to establish a full guardianship.[14] Under these circumstances, defendant’s unfitness was clearly established at prior proceedings. Indeed, defendant admitted her unfitness and willfully forwent her statutorily granted right to regain custody despite the admission. Defendant further could have challenged the results of the guardianship proceedings by appealing, but she did not do so. The court should not now be directed to sweep such findings and admissions under the rug by applying a constitutional presumption in favor of fit parents in an action involving the very people who cared for defendant’s children in the face of her parenting failures. For these reasons I conclude that when, as here, a third party establishes a custodial environment after proof of a parent’s unfitness, the procedure for changing an established custodial environment mandated by MCL 722.27(l)(c) controls.
*299 rv conclusion
In conclusion, I agree with the majority that a fit parent who properly seeks custody under the CCA benefits from the parental presumption in MCL 722.25(1). But, contrary to the majority, I would conclude that, where a parent’s lack of fitness is established, MCL 722.27(l)(c) controls if a third party has an established custodial environment for the children.
Further, if parental or custody rights are governed by other proceedings, a parent is precluded from using the CCA as an end run around such proceedings; rather, the first court to gain jurisdiction over these matters retains jurisdiction. The CCA provides a single exception to this rule in MCL 722.26b, which plaintiffs properly invoked in this case and which permits guardians to seek custody although guardianship proceedings are ongoing. But, finally, I agree with the majority that even when a custody action is properly filed under § 6b, as here, the circuit court is not bound to award custody to any party. Instead, it has broad discretion to act “for the best interests of the child . . . .” MCL 722.27(1). Accordingly, the court in its discretion may dismiss plaintiffs’ custody action in light of plaintiffs’ apparent attempt to subvert the ongoing guardianship proceedings in which defendant was fulfilling increasing duties to her children and gaining increased visitation time.

 The majority observes that all proceedings in this case took place in the Oakland Circuit Court although there were two separate cases: the probate court guardianship case and the circuit court CCA case. It is helpful to note that the Family Division of the Oakland Circuit Court and the Oakland County Probate Court share jurisdiction over selected matters pursuant to a concurrent jurisdiction plan authorized by MCL 600.406. Thus, although probate courts generally have jurisdiction over guardianship proceedings and circuit courts have jurisdiction over CCA proceedings, all the proceedings between the parties in this case effectively took place before the same court. Even absent a concurrent jurisdiction plan, the probate judge assigned to a guardianship matter must be assigned to serve as the circuit court judge in a subsequent CCA case brought by the guardians. MCL 722.26b(5). Here Judge Eugene A. Moore presided over the guardianship proceedings but later disqualified himself in the CCA matter. The CCA proceedings were ultimately presided over by Judge Linda S. Hallmark. Judges Moore and Hallmark are both Oakland County Probate Court judges assigned to the Family Division of the Oakland Circuit Court.

 By design, limited guardianships give parents the opportunity to correct whatever conditions led them to give up custody of their children and to regain custody upon proof of compliance with a limited guardianship placement plan. MCL 700.5205(2). A parent has the right to petition to terminate the limited guardianship under MCL 700.5208 and, if the parent has “substantially complied” with the placement plan, the court must terminate the guardianship. MCL 700.5209(1). A limited guardian also may not seek full custody of a child under the CCA if the parent *283 substantially complies with the placement plan. MCL 722.26b(2). Before establishing a limited guardianship, however, the parent must also be informed that, if he fails without good cause to comply with the placement plan, his parental rights may be terminated under the juvenile code. MCL 700.5205(2).

 MCL 700.5204(3) empowers a limited guardian to seek appointment as a full guardian as long as the petition is not based merely on the suspension of parental rights incident to the limited guardianship petition.

 I concur in the majority’s conclusion that Mason improperly created a preponderance of the evidence standard “out of thin air,” ante at 272, where the text of the CCA includes no such standard.

 The longstanding rule concerning concurrent jurisdiction was aptly described in Schell where, as here, the circuit court was called upon to *285 decide a custody issue. Significantly, in Schell, prior probate court proceedings concerning the child appear to have been abandoned and effectively closed. Accordingly, this Court held:
As stated by Mr. Justice COOLEY in [Maclean] v. Wayne Circuit Judge, 52 Mich. 257 [259; 18 NW 396 (1884)]:
“It is a familiar principle that when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its action.”
The circuit court and the probate court, juvenile division, had concurrent jurisdiction. The former court having acquired it first, retained it. [Schell, 257 Mich at 88 (emphasis added).]

 The most relevant provisions of MCL 712A.2(b) confer court jurisdiction over a child:
(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects *286 or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship....
(2) [Or wjhose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

 Various protections address the parent’s due process rights throughout the proceedings, including rights to notice, to participate in all proceedings, see MCL 712A.19(5)(c), MCL 712A.19a(4)(c), and MCL 712A.19b(2)(c), and to an attorney at each stage of the proceedings, MCL 712A.17c(4) and (5).

 Indeed, EPIC’s guardianship schemes could be effectively nullified, generally, if a parent could avoid ongoing guardianship proceedings by simply filing for custody under the CCA.

 To be clear, although the CCA generally cannot he used to override other proceedings, the CCA is often properly employed incident to other proceedings when appropriate. For example, custody actions may “ariseG incidentally from another action in the circuit court or an order or judgment of the circuit court,” MCL 722.27(1), including a divorce action.

 In accord, historically this Court has recognized that parental rights do not derive from mere biology or exist independently from parental duties. As we explained in In re Gould, 174 Mich 663, 669-670; 140 NW 1013 (1913):
The law recognizes the rights of the father because it recognizes the natural duties and obligations of the father. The father’s right to and authority over his child are secure and inviolable so long as he properly discharges the correlative duties.
But the absolute power of the father over his infant children, to treat them as property and dispose of them as he sees fit because they are his, which was once recognized under the Roman law of patriapotestas and in the codes of early nations, no longer obtains. Paternal authority is subordinate to the supreme power of the State. Every child born in the United States has, from the time it comes into existence, a birthright of citizenship which vests it with rights and privileges, entitling it to governmental protection—
“And such government is obligated by its duty of protection, to consult the welfare, comfort, and interests of such child in regulating its custody during the period of its minority.” Mercein v. People, 25 Wend. (N. Y.) 64 (35 Am. Dec. 653).
The power of parental control, though recognized as a natural right and protected when properly exercised, is by no means an inalienable one. When the “right of custody” is involved between respective claimants for a child, the courts, though in the first instance recognizing prima facie rights of relationship, in the final test are not strictly bound by demands founded upon purely technical claims or naked legal rights, but may and should, in making the award, be governed by the paramount consideration of what is really demanded by the best interests of the child. [Emphasis added.]
*292 Thus Gould emphasized that a child’s rights to be protected from abuse and neglect inform and limit a parent’s rights. As we reiterated 50 years later in Herbstman v Shiftan, 363 Mich 64, 67-68; 108 NW2d 869 (1961):
A child also has rights, which include the right to proper and necessary support; education as required by law; medical, surgical and other care necessary for his health, morals, or well-being; the right to proper custody by his parents, guardian, or other custodian; and the right to live in a suitable place free from neglect, cruelty, drunkenness, criminality, or depravity on the part of his parents, guardian, or other custodian. It is only when these rights of the child are violated by the parents themselves that the child becomes subject to judicial control. A parent having violated the rights of a child forfeits his right to the custody, control and upbringing of that child; and when the safety and best interests of the child demand it, the rights of the child must be protected by the court. [Emphasis added.]

 The majority opines that “no constitutional protections for third persons underlie the established custodial environment presumption in MCL 722.27(l)(c).” Ante at 263. This may be so. But we should not minimize the importance that the CCA’s terms place on the established custodial environment, which serves a child’s needs. Indeed, an “established custodial environment” is defined in terms similar to those used to describe a child’s “rights and privileges entitling it to governmental protection,” which obligate the government “to consult the welfare, comfort, and interests of such child in regulating its custody during the period of its minority.” Gould, 174 Mich at 670 (quotation marks and citation omitted). An established custodial environment exists under § 7(1) (c) “if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort.” Compare the rights of a child listed by Herbstman, 363 Mich at 67: “proper and necessary support; education as required by law; medical, surgical, and other care necessary for his health, morals, or well-being; the right to proper custody by his parents, guardian, or other custodian . ...”

 My conclusions here stem from my willingness to agree, for purposes of this analysis, with the majority’s assumption that MCL 722.25(1) and MCL 722.27(l)(c) “irreconcilably conflict” when a parent seeks custody from a third party with an established custodial environment, ante at 273; both provisions appear to mandate action from the court, stating respectively that “the court shall presume that the best interests of the child are served by awarding custody to the parent,” § 5(1), and that “[t]he court shall not... change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child,” § 7(l)(c). (Emphasis added.) Yet because § 7 broadly circumscribes the circuit court’s power in all cases under the CCA, I would be more inclined to hold that the prohibition on changing an established custodial environment in § 7(l)(c) clearly controls, as a textual matter, whenever the terms of both § 5(1) and § 7(l)(c) apply in a given case. I do not agree with the majority that, through § 5(1), the Legislature clearly intended to “offer[] greater protection [than is required by the constitution] to the fundamental parenting rights of *295 natural parents, regardless of whether the natural parents are fit.” Ante at 274. Nevertheless, my observations concerning the textual dominance of 7(1) (c) are largely inapposite to my overall conclusion; I am persuaded that, if a fit parent’s custody interests are opposed to those of a third party with an established custodial environment, the parent should benefit from a parental presumption as a matter of constitutional right.

 The majority states that my approach is contrary to Fletcher v Fletcher, 447 Mich 871, 889; 526 NW2d 889 (1994), which required the trial court on remand to consider “up-to-date information” and “(any other changes in circumstances)” when awarding custody. See ante at 277 *297 n 61. I have no objection to the Fletcher Court’s requirement, which applied to the trial court’s consideration of the best interests factors in MCL 722.23. But I disagree with the majority’s assertion that Fletcher precludes a trial court from taking into account a past finding of unfitness when determining whether the presumption in MCL 722.25(1) must prevail over the mandate in MCL 722.27(l)(c) as a constitutional matter. Fletcher addressed only the best interests determination on remand in light of the fact that circumstances may change during the appellate process. See Fletcher, 4Á1 Mich at 888-889. Indeed, it expressly prohibited reconsideration of the threshold question whether any party had an established custodial environment for purposes of applying § 7(l)(c). Id. at 889 n 10 (“We do not suggest that the events which have taken place during the appellate process give rise to an ‘established custodial environment’ that... alters the burden of proof in favor of the party who has enjoyed custody during the appeal.”). In no way did Fletcher suggest that the threshold issue of a parent’s past, admitted unfitness should be reconsidered over time in order to alter the burden of proof.
The majority further states that I would “make the initial admission of unfitness dispositive” although defendant “was fulfilling increasing duties to her children and gaining increased visitation time.” Ante at 278 n 61. First, I would note that — just as the majority asserts that the established custodial environment may be given weight when the court considers the best interests factors, ante at 279 n 65 — defendant’s current, apparently increasing ability to care for her children should certainly be given weight during this process. Second, to the extent that the majority suggests that a past admission of unfitness should not be dispositive because defendant’s lack of fitness here diminished and should be reconsidered over time, I note that defendant admitted her unfitness in 2002, had no contact with her children at all for approximately two years during 2003-2005, was released from prison in July 2005, and had been back in contact with her children for only about six months when plaintiffs filed their complaint for custody in May 2006. By this time, the children had been living with plaintiffs in Michigan for about four years. Accordingly, I emphasize my conclusion that a past admission of unfitness is not dispositive in itself. Rather, by its terms the mandate in § 7(l)(c) — which circumscribes the court’s power to “[mjodify or amend its previous judgments or orders” and specifically to “modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment” — controls only when a prior admission of unfitness led to additional circumstances and court orders creating an established custodial environment with a third party. Indeed, by definition, the prohibition on changing the established custo *298 dial environment in § 7(l)(c) applies only when a parent’s lack of fitness continues over time so that third parties take on the parental role and establish a custodial environment — such an environment is established only if “over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort.” MCL 722.27(l)(e) (emphasis added).

 Plaintiffs aptly observe that defendant’s lack of fitness was the direct cause of their appointment as guardians — a status that bestows rights akin to parental rights. MCL 700.5215. They further note that defendant’s absence from her children’s lives thus created the very established custodial environment with plaintiffs that defendant now seeks to delegitimize by applying the constitutional presumption in favor of fit parents.