*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. L. BACKENSTOSE, Minor.

UNPUBLISHED
July 30, 2019

No. 347135
Oakland Circuit Court
Family Division
LC No. 2017-857373-NA

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child, JB.[1]  Respondent's rights were terminated pursuant to MCL 712A.19b(3)(a)(*ii*) (desertion by a parent for more than 91 days), MCL 712A.19b(3)(g) (parent fails to provide proper care and custody), MCL 712A.19b(3)(j) (reasonable likelihood that the child will be harmed if returned to parent), MCL 712A.19b(3)(k)(*ii*) (parent abused the child with criminal sexual conduct), and MCL 712A.19b(3)(k)(*ix*) (parent sexually abused the child).  Respondent does not challenge any of the factual bases for terminating her parental rights.  Rather, respondent seemingly argues only that she has a constitutional right to abuse her child.  Finding such an argument devoid of arguable legal merit, we affirm.

## I.  BACKGROUND

Respondent and JB were originally living in a rental house owned by MB, who was the father of respondent and grandfather of JB.  However, in June 2015, respondent called MB and threatened to burn the house down with both herself and JB inside.  MB and TW, who was MB's fiancée, took JB while respondent checked herself into a psychiatric evaluation clinic.  Respondent only saw JB on a temporary basis after that, and JB never lived with respondent permanently again.  Respondent became homeless, so she and JB would generally stay in respondent's car or in a motel during visits.  The longest contiguous period JB stayed with

[1] The trial court also terminated the parental rights of JB's father, who is not a party to this appeal.

respondent was three weeks. In October 2015, TW and MB petitioned for and were awarded guardianship of JB, because respondent would not let TW or MB take JB to school or to the doctor.

While JB was in the care of TW and MB, JB exhibited alarming behaviors. JB was hesitant talking to people, and he would often tremble and shake when sitting on somebody's lap. JB would scream "bloody murder" if someone moved his toys from how they were arranged. JB was found fondling himself and masturbating while in the bathtub, and when told to get out of the tub, JB would lay face down in the bathtub and put his buttocks up in the air. On other occasions, MB would be naked getting out of the shower and JB would try to put his face into MB's buttocks and try to grab MB's genitals. In another incident, JB was found masturbating in his bedroom with his leg on the bed. There were several occasions that JB had incidents at school. Once, a teacher found JB and another girl on the playground with both of their pants down. Another time, JB was discovered in the school bathroom with his pants off; JB was dangling his genitals at the kids and tried to get other children to touch him.

TW sought a psychiatric evaluation for TB, and JB eventually started counseling at Easter Seals in May 2016. JB first disclosed respondent's sexual abuse to TW in June 2017. In particular, he told TW that respondent would leave JB in the bathtub while "sucking boy's butts." He also disclosed that respondent had JB suck her butt and respondent had sucked JB's butt. JB had also seen another man with respondent's breast in the man's mouth. JB disclosed to a forensic interviewer that he had witnessed respondent engage in a sexual act with another person, and that respondent had made JB lick her private more than once. JB described that licking respondent's private tasted nasty and that he could feel bumps while respondent would say "oh yeah" as if she was enjoying it. JB recalled an incident where he witnessed two men throwing his mother out of the car, stating that it made him feel scared. Petitioner commenced this matter on October 4, 2017, seeking termination of respondent's parental rights. After extensive testimony regarding respondent's abuse, as well as JB's significant improvements while in the care of TW and MB, the trial court terminated respondent's parental rights as noted. This appeal followed.

## II. STANDARD OF REVIEW

Irrespective of whether the trial court decides an issue, the issue is preserved if it was presented to the trial court. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Respondent did not raise the issue of whether her constitutional rights were violated before the trial court, so this issue is unpreserved on appeal. We therefore review respondent's claim for plain error affecting her substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.*, quoting *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000) (quotation marks and citation omitted). An error affects substantial rights if it affects the outcome of the proceedings. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Statutory grounds must be proved by clear and convincing evidence, but "only one statutory ground need be proved to support the termination of a parent's parental rights." *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). The "clear and convincing evidence standard" is "the most demanding standard applied in civil

cases." *In re Martin*, 450 Mich 204, 226-227; 538 NW2d 399 (1995). In reviewing whether the trial court properly found a statutory ground for termination, " 'regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.' " *In re Schadler*, 315 Mich App 406, 408-409; 890 NW2d 676 (2016), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

## III. STATUTORY GROUNDS FOR TERMINATION

The trial court found that statutory grounds for termination had been established pursuant to MCL 712A.19b(3)(a)(*ii*), (3)(g), (3)(j), (3)(k)(*ii*), and (3)(k)(*ix*). The applicable subsections provide:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(a) The child has been deserted under either of the following circumstances:

\* \* \*

(*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

\* \* \*

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

\* \* \*

(*ix*) Sexual abuse as that term is defined in [MCL 722.622.][2]    [MCL 712A.19b(3)(a)(*ii*), (g), (j), (k)(*ii*), and (k)(*ix*).]

Because respondent has not challenged the trial court's findings, any issue respondent might have regarding the statutory grounds is abandoned. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). We nevertheless conclude that even if respondent had challenged the statutory grounds findings by the trial court, we would find no error.

Three individuals, including JB's therapist, a child forensic interviewer, and TW, all testified that JB had disclosed to them that respondent made JB lick her vagina and had "sucked [JB's] butt." The trial court found their testimony to be more credible than that of respondent, who denied the allegations, and this Court must give regard to that determination. *Schadler*, 315 Mich App at 408-409. That testimony is sufficient to establish that respondent had sexually abused JB, which establishes statutory grounds for termination under both MCL 712A.19b(3)(k)(*ii*) and (*ix*). Additionally, TW testified that respondent had left JB with her and MB in 2015, and, although respondent visited JB sporadically after that point, JB had not seen respondent for almost a year prior to the petition being filed in October 2017. That testimony establishes that MCL 712A.19b(3)(a)(*ii*) was satisfied. When respondent did see JB, she would not take JB to the doctor and would not let TW and MB enroll JB in school. Respondent's failure to care, combined with her abandonment and sexual abuse of JB, is sufficient to satisfy MCL 712A.19b(3)(g). Finally, because that sexual abuse happened repeatedly and respondent also repeatedly failed to care for JB while he was in her custody, JB is likely to be harmed again if returned to respondent's care, thereby satisfying MCL 712A.19b(3)(j). Therefore, clear and convincing evidence existed to establish that at least one statutory ground for termination existed.

## IV.  BEST INTERESTS

After a statutory ground for termination has been established under MCL 712A.19b(3), a court may terminate a parent's parental rights if it "finds by a preponderance of the evidence that termination is in the best interests of the children." *Gonzales/Martinez*, 310 Mich App at 434. In making a best-interest determination, the trial court is allowed to consider "the whole record," which includes evidence introduced by any party. *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). Again, respondent has abandoned this issue by failing to present any argument, but we would find no error in the trial court's best interests determination even if respondent had challenged that determination.

---

[2] MCL 722.622 provides: " 'Sexual abuse' means engaging in sexual contact or sexual penetration as those terms are defined in [MCL 750.520a], with a child." MCL 750.520a defines "sexual contact" as, in relevant part, "the intentional touching of the victim's or actor's intimate parts[,]" and "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body[.]" MCL 750.520a(q) and (r).

In making a best-interest determination, a court may consider a number of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (quotation marks omitted). A child's safety and well-being, including the risk of harm a child might face if returned to the parent's care, is a relevant factor in a best-interest determination. *VanDalen*, 293 Mich App at 141-142. The primary beneficiary and focus of the best-interest analysis should be the child rather than the parent, and the child's interest in a normal family home predominates over any interest of the parent. *Schadler*, 315 Mich App at 411; *Medina*, 317 Mich App at 237-239. Although a child's placement with relatives generally weighs against termination, that placement is only one factor to be considered in the best-interest analysis, and a court may still terminate a parent's rights and place that child with a relative if it is in the best interests of the child to do so. *Olive/Metts*, 297 Mich App at 43.

The evidence discussed above also supports a finding that termination was in JB's best interests. Respondent had repeatedly made JB lick her vagina, and she, in turn, had "sucked [JB's] butt." JB observed respondent engage in sexual acts with other men, such as observing her naked with a man or seeing another man put respondent's breast in the man's mouth. As a result, JB began acting out sexually in ways that are troubling for a young child, such as masturbating, attempting to grab MB's genitalia, and exposing JB's "privates" to other children at school. That evidence clearly demonstrates that JB is not safe while in respondent's care. *VanDalen*, 293 Mich App at 141-142. Respondent also acknowledged that she has unresolved issues related to substance abuse, emotional instability, and mental health. As a result, she was unprepared to care for JB or provide a stable home for JB. To the contrary, JB has done well while living with MB and TW; JB's needs are being met, and many of the behavioral issues have subsided. That evidence demonstrates that placement with MB and TW is advantageous for JB and serves JB's need for stability and permanence. *White*, 303 Mich App at 713. Although JB was placed with relatives, a factor that generally weighs against termination, the rest of the evidence supports a finding that termination of respondent's parental rights was clearly in JB's best interests. *Olive/Metts*, 297 Mich App at 43.

## V. CONSTITUTIONAL RIGHTS

As respondent properly observes, parents have a fundamental liberty interest "in the companionship, care, custody, and management of their children." *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993). That interest may not be invaded merely because a parent is less than ideal. *In re Rood*, 483 Mich 73, 76; 763 NW2d 587 (2009) (CORRIGAN, J.). As an ancient and critical interest, the state should be reluctant to intrude into a parent's relationship with their child. *In re Ferranti*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 157907, slip op at p 21). Consequently, parents' rights to "make decisions concerning the care, custody, and control of their children" are protected by due process. *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). Due process is, in turn, protected by the Fourteenth Amendment to the United States Constitution, which provides that the state may not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

However, it has long been established that a parent's right to parent their children does not confer a right to *abuse* their children. See *Corrie v Corrie*, 42 Mich 509, 510; 4 NW 213 (1880). A parent may not "treat them as property and dispose of them as he sees fit because they are his." *In re Gould*, 174 Mich 663, 669; 140 NW 1013 (1913). Children have rights of their own that the state is obligated to protect. *Id*. at 669-670. Thus, "[a] parent's right to control the custody and care of her children is not absolute, as the state has a legitimate interest in protecting 'the moral, emotional, mental, and physical welfare of the minor' and in some circumstances 'neglectful parents may be separated from their children.' " *Sanders*, 495 Mich at 409-410, quoting *Stanley v Illinois*, 405 US 645, 652; 92 S Ct 1208; 31 L Ed 2d 551 (1972). It is equally well established that the balance has been struck by requiring the state to prove at least one statutory ground for termination by clear and convincing evidence. *Santosky v Kramer*, 455 US 745, 768-770; 102 S Ct 1388; 71 L Ed 2d 599 (1982); *In re Render*, 145 Mich App 344, 348; 377 NW2d 421 (1985). If the state proves by clear and convincing evidence that a statutory ground for termination exists, then "the parent's interest in the companionship, care, and custody of the child gives way to the state's interest in the child's protection." *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000), superseded by statute on other grounds as stated in *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

Respondent offers us nothing more than a collection of quotations or paraphrases from various cases with no analysis. This is barely an argument and constitutes an abandonment. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959); *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). We may choose to consider an issue not properly presented to us if justice so requires. *LME v ARS*, 261 Mich App 273, 287; 680 NW2d 902 (2004). However, respondent has not even made a token gesture at challenging the trial court's findings that at least one statutory ground for termination was established by clear and convincing evidence. Therefore, to the extent any argument can be discerned at all, it is an assertion that respondent has a constitutional right to commit child abuse simply because she is perpetrating the abuse against her own child. Such an argument is not only extremely disturbing, but it has been soundly rejected for more than a century. We are appalled by the prospect of it being made now.

We agree with respondent that, as discussed, all parents have an important due process right to require the state to prove at least one statutory ground by clear and convincing evidence, and it is entirely appropriate for a parent to insist upon that right. The case law respondent cites would have been proper if no statutory grounds had been properly established, or if respondent disputed whether at least one statutory ground had been properly established. However, there is *no dispute whatsoever* that respondent sexually abused her child and that at least one statutory ground was proven by clear and convincing evidence. Under the circumstances, respondent's argument, to the extent she makes one, is "devoid of arguable legal merit," and respondent could not possibly have reasonably believed it was "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." MCL 600.2591(3)(a)(*iii*); MCR 1.109(E)(5)(b). However, because it is doubtful whether respondent makes any argument at all, we conclude that sanctions would be unwarranted, and we would exercise our discretion to decline their imposition in any event. MCR 7.216(A)(7).

Affirmed. Notwithstanding our decision to decline to impose sanctions and this Court's general policy against awarding taxable costs in termination of parental rights cases, in light of

the exceptional lack of merit in respondent's brief, we direct that appellees the Department of Human Services and the Lawyer Guardian Ad Litem may each tax costs. MCR 7.216(A)(7); MCR 7.219(A); MCR 7.219(I).

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens