*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMANDA PACHOLSKI,

      Plaintiff-Appellant,

v

MARK LADD,

      Defendant-Appellee.

UNPUBLISHED
March 14, 2024

No. 368466
Macomb Circuit Court
Family Division
LC No. 2020-000544-DS

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

In this custody action, plaintiff appeals as of right the trial court's order denying plaintiff's objections to the referee report and recommendation that sole legal and physical custody be awarded to defendant. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff (mother) and defendant (father) never married and had two children, ML and EL. After their relationship ended, father began living with a woman, who is now his fiancée. Father is a stay-at-home parent while his fiancée, an attorney, provides the household income. Mother is unemployed and receives Social Security payments because she is disabled by her narcolepsy[1] and cataplexy.[2] Mother and father entered a final consent judgment for custody on September 24,

---

[1] "Narcolepsy is a chronic neurological disorder that affects the brain's ability to control sleep-wake cycles." National Institute of Health Neurological Disorders and Strokes, Health Information, Narcolepsy, <https://ninds.nih.gov/health-information/disorders/narcolepsy> (accessed March 6, 2024).

[2] Cataplexy is "sudden muscle weakness while awake that makes a person go limp or unable to move." National Institute of Health Neurological Disorders and Strokes, Health Information, Narcolepsy, <https://ninds.nih.gov/health-information/disorders/narcolepsy> (accessed March 6, 2024).

2020, in which they agreed to share legal and physical custody of the children. The parents agreed that, during the school year, the children would reside with mother from Monday to Friday, and with father from Friday to Monday, with variations outside of the school year and on holidays.

In May, 2022, Children's Protective Services (CPS) opened a case that resulted in substantiated allegations of improper supervision against both parents. After both parents successfully completed their treatment plans, the case was closed in early 2023.

At issue in this appeal is father's August 30, 2022 ex parte emergency motion to suspend custody and parenting time for mother. Father alleged that mother's negligent supervision of the children resulted in ML sustaining multiple injuries, including a burned lip when he chewed through an electrical cord, bruises on his body, and a black eye that mother attributed to throwing a miniature candy bar to another child that struck ML. Attached to father's motion was a medical report documenting ML's eye injury and the pediatrician's opinion that mother's account was inconsistent with the injury ML suffered. The report noted that ML was a "[s]uspected victim of physical abuse[.]"

The trial court found that father's allegations met the threshold for a change of circumstances and referred the matter to the Friend of the Court (FOC) for a custody and parenting investigation and recommendation. The FOC report indicated there was clear and convincing evidence that supported father's request to modify the established custodial environment the children had with both parents because mother improperly supervised the children, suffered from health issues that compromised her parenting ability, ignored a court order to have the children tested for autism, ignored signs that the children were malnourished, returned the children to father with numerous bruises and injuries on a regular basis, denied father parenting time, and denied Nicole Bryant, a CPS caseworker, access to the children.

Mother filed an objection to the FOC report and recommendation, alleging that the information and circumstances utilized to evaluate the best-interest factors were either not relevant to the best-interest factors or were outdated and inaccurate. Mother requested that a second FOC investigation be conducted or an evidentiary hearing be held on the matter.

Subsequently, an evidentiary hearing was held before a referee. At the hearing, mother, father, father's fiancée, the children's paternal grandmother, and Bryant provided testimony concerning CPS's involvement with the children, the parents' compliance with CPS, the children's history of injuries, the parents' involvement in the children's medical appointments and special needs programs, the parents' health issues, the parents' compliance with parenting time, and the children's possible malnourishment.

Following the hearing, the referee found that the children had an established custodial environment with both parents and that there was clear and convincing evidence that father should be awarded sole legal and physical custody of the children because he could provide a more appropriate, stable, and safe living environment for the children, while also providing for their special needs. The referee also noted that there were serious concerns about the children's safety while in mother's care, and found that mother was not credible when she stated the children were not in her care when most of their injuries occurred. Specifically, the referee found that best-interests factors MCL 722.23(b) (capacity to give love, affection, guidance, and continue religious

upbringing), (g) (mental and physical health), (h) (home, school, and community records), (j) (willingness to facilitate parental relationship), and (*l*) (any other relevant factor) weighed in favor of father because under (b) mother struggled to manage her household and provide appropriate guidance and supervision for the children; (g) mother's health issues were more extreme than father's health issues; (h) father was almost entirely responsible for the children's extensive health needs; (j) mother denied father parenting time; and (*l*) father's parenting skills increased while mother's decreased.

Mother objected to these best-interest findings and argued that there had been no material change justifying a modification to the custody order. In a written opinion and order, the trial court held that, contrary to mother's assertions, the referee's recommendation was based on relevant information and supported by testimony provided at the evidentiary hearing. Accordingly, the trial court denied mother's objection to the referee report and recommendation, adopted the referee's findings and recommendation, and awarded father sole legal and physical custody of the children.

From this decision, mother appeals.

## II. STANDARDS OF REVIEW

In matters involving child custody, " 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington v Pennington*, 329 Mich App 562, 569-570; 944 NW2d 131 (2019), quoting MCL 722.28. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id*. at 570. Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. *Lieberman v Orr*, 319 Mich App 68, 77; 900 NW2d 130 (2017). "[A]n abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017) (quotation marks and citation omitted).

## III. ANALYSIS

### A. CHANGE OF CIRCUMSTANCES

Mother first argues that the trial court erred by finding that there had been a change of circumstances that warranted a change in the parties' custody agreement because the facts that the trial court relied on in support of its' conclusion existed before the entry of the last custody agreement, and, therefore, could not justify a change in the custody agreement. "As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Brown v Brown*, 332 Mich App 1, 9; 955 NW2d 515 (2020) (quotation marks and citation omitted).

> [T]o establish a "change of circumstances," a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have

materially changed . . . . [T]he evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. [*Martin v Martin*, 331 Mich App 224, 236; 952 NW2d 530 (2020) (quotation marks and citation omitted).]

The trial court found that father's allegations regarding abuse, neglect, and improper supervision of the minor children constituted a change of circumstances sufficient to permit modification of the custody order. Father's motion described mother's history of neglect as to the May 13, 2021 injury to ML's lip. And father documented a bruise on ML's leg on May 27, 2022, which was reported to CPS days later. Finally, on August 19, 2022, ML arrived for parenting time with the black eye, which mother claimed resulted from a miniature chocolate bar she tossed in his direction. Also attached to father's motion for a change of custody was a pediatrician's report dated August 26, 2022, detailing ML's multiple bruises and black eye. The report stated that ML was a suspected victim of physical abuse because his black eye could not have been caused by a miniature candy bar as mother described. The report also contained pictures of ML's bruising. The last custody order prior to father's motion was entered in September 2020. Consequently, this medical report established a change in circumstances that occurred after the last custody order. This change of circumstances—suspected physical abuse—had the potential to significantly affect the children's wellbeing if one of the parents was physically abusing the children or failing to properly supervise them, resulting in excessive injuries. Accordingly, the trial court did not err in its determination that there was a change of circumstances that warranted review of the existing custody arrangement.

## B. BEST-INTEREST FACTORS

Mother argues that the information and circumstances used to evaluate the best-interest factors were either not relevant, lacked evidentiary support, or had changed by the time of the evidentiary hearing. The parties do not dispute that the children had an established custodial environment with both parents. Therefore, the trial court was required to find clear and convincing evidence that modifying the children's established custodial environment was in their best interests. *Griffin v Griffin*, 323 Mich App 110, 119; 916 NW2d 292 (2018). The best-interest analysis is guided by the statutory factors set forth in MCL 722.23. *Id*. On appeal, as she did below, mother challenges the trial court's findings under MCL 722.23(b), (g), (h), (j), and (*l*).

### 1. MCL 722.23(b)

MCL 722.23(b) considers "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." With regard to this factor, the trial court focused on the parties' parenting skills and made the following findings[3]:

---

[3] The trial court adopted the referee's findings after denying plaintiff's objections.

-4-

[b]oth parties are found to have the capacity to give the minor children love and affection. Plaintiff, however, has been struggling to manage her household, [and] provide appropriate guidance and supervision for the children. Defendant has improved his parental skills and taken seriously the children's needs for guidance, care, and education. This factor was found to weigh slightly in favor of Defendant.

This finding was not contrary to the great weight of evidence. While both parents had substantiated allegations of improper supervision, the evidence demonstrated that father made more substantial and faster improvement in his parenting skills than mother because he was consistent with his services and stayed in constant communication with Bryant. Additionally, ML sustained a serious burn because plaintiff failed to watch him. There were also concerns that the children were malnourished while in mother's care because they were seen eating out of trash cans at school, even though Bryant verified that the children were within the average weight range for their age.

During the summer of 2022, Bryant recommended that father seek full custody of the children. At that time, Bryant was contemplating filing a petition to remove the children from mother. Mother even denied Bryant access to the children during one of Bryant's wellness visits, although Bryant could see mother talking on the phone as the baby cried.[4] Bryant only changed her opinion about filing a petition against mother after mother's attorney became involved and mother began cooperating with CPS in December 2022. Father also voluntarily kept in regular contact with Bryant, but mother only provided pictures and updates when asked to do so. The children's paternal grandmother testified she had no concerns about father's care of the children; however, she had concerns about the children's wellbeing with mother.

Mother suggests that the children's bodily injuries were due to their autism and hyperactivity. In particular, she points to the time EL poked ML in the eye. Mother further contends that father's testimony about what the doctor told him about ML's black eye was hearsay and that the referee improperly admitted father's testimony over mother's objection. Even if mother was correct that the doctor's opinion conveyed by father was hearsay, she has not properly preserved her challenge, see MCR 7.212(C)(5). And, in any event, she cannot demonstrate how she was prejudiced when she offered no objection to the admission of the photographs of ML's injuries along with the doctor's report, which concluded that ML's black eye was due to physical abuse, a finding inconsistent with mother's reported tossing of a miniature chocolate bar. In sum, given the testimony and exhibits presented during the evidentiary hearing, we conclude that the trial court's finding that factor (b) weighed slightly in favor of father was not contrary to the great weight of evidence.

### 2. MCL 722.23(g)

MCL 722.23(g) considers "[t]he mental and physical health of the parties involved." With regard to this factor, the trial court made the following findings:

---

[4] In addition to ML and EL, mother also had a teenage daughter and a baby born in 2021. Mother was only the primary custodian of the baby.

Plaintiff and the Defendant have a lot going on with their health issues. But the Plaintiff's [health issues] are simply more serious, more extreme, and the Referee finds that the Plaintiff is not taking the extra care needed to manage her health issues and provide appropriate supervision of two high energy special needs children. This has been exasperated [sic] by the addition of a new baby in plaintiff's home. Plaintiff suffers from narcolepsy. A serious sleep disorder. The addition of an infant only adds to the instability of the Plaintiff's sleeping schedule. There is no additional parent in the life of that infant to help the Plaintiff, and while no fault of her own, the Referee finds that the Plaintiff is stretched thin, and the parties' children have suffered as a direct result of the Plaintiff's circumstances.

Defendant testified that last year he suffered a serious illness and could not work or even exercise much parenting time while he recovered. It was the Defendant's testimony that this was an acute illness and not a chronic condition, from which he has now fully recovered.

This factor is found to weigh against the Plaintiff.

Mother challenges the court's findings that she was "stretched thin," and that the children had suffered as a direct result of her circumstances. Mother notes that there was no medical testimony at the evidentiary hearing and that Bryant provided no testimony that mother's medical condition affected her ability to care for the children.

There is no dispute that mother had a child who was born in December 2021, that lived with mother.[5] In mother's view, the trial court engaged in speculation when it determined that the infant exacerbated her sleep disorder because no witness offered testimony of that nature. Such a determination, however, could have been drawn as a reasonable inference from the evidence presented. At the evidentiary hearing, mother testified that her narcolepsy was controlled by medication and had been since 2013. But the children's paternal grandmother testified that mother "would frequently fall asleep" due to her medical condition. Although paternal grandmother candidly admitted that she had not personally witnessed mother falling asleep in the last six months, she described instances where mother had fallen asleep and was difficult to arouse while caring for ML and EL, who were born in 2017 and 2019. The paternal grandmother further testified that during father and mother's relationship father had changed jobs to ensure the children were cared for. We recognize that the trial court was in the best position to assess the witnesses' credibility, *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008), and it determined that mother was not credible. Given the issues that arose with the children, we will not interfere with the trial court's determination that mother's health issues were exacerbated after the birth of her youngest child, which fact supports the trial court's conclusion that factor (g) weighed in father's favor. *Id.*

Moreover, the trial court was correct when it recognized that mother's health issues were chronic, while father's health issues had been acute before they fully resolved. Because the trial

---

[5] Mother had a shared custody arrangement with her teenage daughter's father.

court's finding that mother's health issues were more serious than father's health issues was supported by the record, we conclude the trial court's finding, that factor (g) weighed in favor of father, was not against the great weight of evidence.

### 3. MCL 722.23(h)

The trial court found MCL 722.23(h), which considers "[t]he home, school, and community record of the child," weighed in favor of father because "Defendant has been actively involved in the children's educational needs[,] as has Plaintiff[;] however[,] Defendant has almost entirely been responsible for the children's health needs which are extensive."

The testimony was clear that the reason father took the children to most of their medical appointments was because he lived much closer to the pediatrician than mother did. Mother did not change the children's pediatrician because of their longstanding relationship. We recognize that parents in shared custody arrangements must work together and delegation is often necessary to successfully care for children. Nevertheless, the trial court's decision was not against the great weight of evidence because father, though understandably so, was indeed more involved in the children's doctor appointments than mother.[6]

As to the autism evaluations, mother protests that she made efforts and encountered roadblocks in securing the evaluations. She also states that there was testimony that father could not secure the autism evaluations. But there was testimony that father arranged for the children's autism evaluations. Again, the referee was in the best position to determine the credibility of the witnesses, *Berger*, 277 Mich App at 705. Because the record supported the trial court's finding that factor (h) weighed in father's favor, we conclude that it was not against the great weight of evidence.

### 4. MCL 722.23(j)

MCL 722.23(j) considers

> [t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

With regard to this factor, the trial court made the following findings:

> Plaintiff has denied Defendant parenting time. Her reasons for doing so are seriously concerning to the Referee. The Referee specifically finds that the Plaintiff in the past denied the Defendant parenting time out of anger, spite[,] and to hinder

---

[6] Mother claims that the court did not credit her with scheduling the children's dental appointments. But ML had only recently had a dental appointment and mother was "about to call" to schedule a dental appointment for EL.

the unraveling situation in her own home. Defendant testified as to his willingness and intention to cooperate in co-parenting with the Plaintiff, to provide the children the opportunity to have parenting time, electronic and or telephonic contact with the Plaintiff. This factor was found to favor Defendant.

The referee's finding, that mother denied father parenting time out of anger or spite, was supported by father's fiancée's testimony that mother would often come up with an excuse to withhold the children from father if she was upset with him. Though mother generally challenges the credibility of father's fiancée's testimony, the trial court was in the best position to assess witness credibility, and apparently found father's fiancée credible. *Berger*, 277 Mich App at 705. We will not alter that finding on appeal. *Id.* In fact, there was an incident where mother refused to return the children to father because they had a birthday party. Mother admitted that she denied father parenting time. And mother refused to allow the children to have video chats with father while they were with her. "It is presumed to be in the best interests of the child to have a strong relationship with both of his or her parents. To this end, factor (j) of the best-interest factors favors parents who facilitate the relationship of their children with the other parent." *Martin*, 331 Mich App at 238-239 (quotation marks and citations omitted). There was nothing in the record indicating that father did not cooperate in working with mother to parent the children or that father attempted to interrupt mother's parenting time. Accordingly, the referee's finding concerning this factor, which was adopted by the trial court, was not against the great weight of evidence.[7]

### 5. MCL 722.23(*l*)

MCL 722.23(*l*) considers "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." Relevant to this factor, the trial court made the following findings:

> There is a lengthy history of making what at best can be deemed poor decisions as it relates to the care and supervision of the minor children and the issue of parenting with the Plaintiff is very concerning. While the Defendant has deficiency's [sic] himself, the Referee finds that in part the Defendant has made a greater effort to improve his living situation and how he manages the parenting of the children. To the contrary, the Plaintiff's situation has declined as it relates to her combined health issues, living situation[,] and ability to parent t[w]o active and special needs children. This factor weighs in the Defendant's favor and against the Plaintiff.

This finding was not against the great weight of evidence. Though both parents had substantiated allegations for improper supervision, mother's improper supervision led to ML's serious burn injury, and the children generally incurred more injuries while in mother's care.

---

[7] Mother also makes an argument that the trial court appeared "to applaud Defendant and reward him . . . for constantly taking photos of the children and reporting each bruise observed before and after parenting time exchanges without regard for the ages of the children and their admittedly frenetic behavior." The record reflects that father did so in an effort to protect the children and himself from being falsely accused of inflicting those injuries.

Additionally, father more quickly and substantially improved his parenting skills than mother, to the point where Bryant recommended that father seek full custody of the children during the summer of 2022, when she was contemplating filing a petition to seek termination of mother's parental rights. Father voluntarily kept in regular contact with Bryant, while mother only provided pictures and updates when asked to do so. Father also followed CPS's recommendation that each child have his own bedroom.

Mother was living alone, as opposed to father's two-adult household. Moreover, ML was burned because mother was not watching him. Mother recently had another child, which added more responsibility to her daily life. Additionally, the children's paternal grandmother testified that mother sometimes slapped the children on their heads and failed to adhere to the recommendations she received regarding care for the children's special needs. Accordingly, the referee's findings under this factor were not contrary to the great weight of evidence. And, because none of the referee's findings were contrary to the great weight of evidence, the trial court did not err by adopting them.

## C. DUE PROCESS

Mother also argues that the trial court violated her constitutional rights because less restrictive means for protecting the children's welfare had already been accomplished prior to the trial court's order changing custody. We disagree.

We begin by noting that this issue is not preserved because mother did not raise it in the trial court. *Tolas Oil & Gas Exploration Co v Bach Servs & Manu, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2. An unpreserved civil issue is subject to the raise or waive rule, which requires litigants to raise an issue in the trial court to preserve it for appellate review. *Id*. "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*. at ___; slip op at 3 (citation omitted). "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. (quotation marks and citations omitted).

In this case, whether the trial court violated mother's substantive due-process rights is a question of law. And, because there are sufficient facts in the record to resolve this question, we will address it.

Parents have a fundamental right to raise their children. *In re Guardianship of Versalle*, 334 Mich App 173, 184; 963 NW2d 701 (2020). The state is precluded from depriving a parent of his or her liberty interest in the care and custody of a child without due process of law. *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 364921 and 365078); slip op at 8. Mother argues that the trial court violated this right because it modified the custody order after CPS had already successfully used less restrictive means to protect the children's welfare. However, mother cites no Michigan authority in support of her theory that due process requires trial courts to pursue other, less restrictive means of protecting children's welfare before modifying a custody order, nor does she attempt to demonstrate that Michigan's legislative scheme for changing a child's established custodial environment are insufficient to protect a parent's

substantive due-process rights. Accordingly, mother has abandoned this part of her argument. See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) ("An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims.") (quotation marks and citation omitted). When "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Id*. (quotation marks and citation omitted). Even if mother had not abandoned this argument, it lacks merit. In *Robertson v Robertson*, unpublished opinion per curiam of the Court of Appeals, issued April 13, 2006 (Docket No. 264321), slip op at 5, this Court rejected a mother's claim that applying the Child Custody Act's best-interest factors to determine custody violated her substantive due process right to parent, reasoning:

> "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v Granville*, 530 US 57, 66; 120 S Ct 2054; 147 L Ed 2d 49 (2000). We fully recognize the importance of this liberty interest. See *Heltzel v Heltzel*, 248 Mich App 1, 18-23; 638 NW2d 123 (2001). However, the interest is simply not implicated in this case because neither party has been found unfit and because this case does not involve a dispute between plaintiff and a third party. See *Mason v Simmons*, 267 Mich App 188, 197; 704 NW2d 104 (2005). Rather, it involves a custody dispute between two fit parents, both of whom benefit *equally* from the constitutional liberty at stake. In a custody dispute between two fit parents, the court's decision is based on the best interest factors of MCL 722.23. See *In re JS & SM*, 231 Mich App 92, 100-101; 585 NW2d 326 (1998), overruled on other grounds sub nom *In re Trejo*, 462 Mich 341, 343; 612 NW2d 407 (2000). Inasmuch as both fit parents are entitled to the same due process right, the equal constitutional interests balance, leaving only the best interest analysis to decide the parties' dispute.[1] The trial court properly relied on the best interest factors alone. [The] [p]laintiff's substantive due process rights were not violated.

---

[1] See e.g. *Rico v Rodriguez*, 120 P3d 812, 818 (Nev, 2005) ("In a custody dispute between two fit parents, the fundamental constitutional right to the care and custody of the children is equal"); *McDermott v Dougherty*, 385 Md 320, 353; 869 A2d 751 (2005) ("[E]ach fit parent's constitutional right neutralizes the other parent's constitutional right, leaving, generally, the best interests of the child as the *sole standard* to apply to these types of custody decisions") (emphasis in original); *Ward v Ward*, 874 So2d 634, 637 (Fla App, 2004) ("When a custody dispute is between two parents, where both are fit and have equal rights to custody, the test involves only the determination of the best interests of the child"); *Owenby v Young*, 357 NC 142, 145; 579 SE2d 264 (2003) ("[T]he protected right is irrelevant in a custody proceeding between two natural parents, whether biological or adoptive . . . . In such instances, the trial court must determine custody using the 'best interest of the child' test"); *Griffin v Griffin*, 41 Va App 77, 83; 581 SE2d 899 (2003) ("Custody and visitation disputes between two fit parents involve one parent's fundamental right pitted against the other parent's fundamental right. The

discretion afforded trial courts under the best-interests test . . . reflects a finely balanced judicial response to this parental deadlock"); *Watkins v Nelson*, 163 NJ 235, 253; 748 A2d 558 (2000) ("When the dispute is between two fit parents, the best interest of the child standard controls because both parents are presumed to be equally entitled to custody. The child's best interest rebuts the presumption in favor of one of the fit parents").

Even though *Robertson* is not precedentially binding, its analysis is persuasive and we adopt it. *In re Ellis*, 294 Mich App 30, 34; 817 NW2d 111 (2011).

Mother also references the *parens patriae* interest in support of her argument that the trial court erred by changing the custody order. See *In re Sanders*, 495 Mich 394, 416; 852 NW2d 524 (2014) ("[W]hile there is still reason to believe that positive, nurturing parent-child relationships exist, the *parens patriae* interest favors preservation, not severance, of natural familial bonds.") (quotation marks and citation omitted). However, what mother does not contemplate in her argument is that the Child Custody Act "is intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Heid v Aaasulewski*, 209 Mich App 587, 593-594; 532 NW2d 205 (1995). In other words, the Child Custody Act advances the *parens patriae* interest by specifying the requirements that must be met before a trial court may modify a custody order. Further, child custody orders "shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. Mother does not assert that the trial court abused its discretion or committed a clear legal error, and, as discussed earlier, the trial court did not make findings of fact that were against the great weight of evidence. Therefore, the statutory requirements for changing a custody order under MCL 722.23 were satisfied and we affirm the trial court's order awarding father sole legal and physical custody.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michael J. Riordan
/s/ Anica Letica